670 A.2d 671

The MARIAN SHOP, INC., t/a & d/b/a J & J Check
Cashing and John Mace, and Marian Lentz

v.

John BAIRD and Catherine Robinson,
and Beneficial Savings Bank.

**Appeal of John BAIRD.**

Superior Court of Pennsylvania.

Argued Aug. 9, 1995.

Filed Jan. 8, 1996.

Alfred Marroletti, Philadelphia, for appellant.

Edward Reif, Philadelphia, for appellees.

Before ROWLEY, President Judge, and CIRILLO and HOFFMAN, JJ.

CIRILLO, Judge:

John Baird appeals from an order of contempt entered in the Court of Common Pleas of Philadelphia County. We reverse.

. A former business partner of John Baird brought a civil action against Baird alleging that he had wrongfully removed money from the check cashing business they operated together. The plaintiff filed an emergency petition asking the court to enter an order enjoining Baird from further depleting the assets of the business while the underlying action was pending. Baird did not attend this hearing, however, Baird's former attorney, Barry Harvis, was present. At the hearing, Harvis notified the court that he would not be representing Baird in the present action, but had attended the hearing to ensure that the status quo would be maintained while Baird secured other counsel for the case. Harvis later telephoned Baird and apprised him of the events that took place at the injunction hearing.

. At the hearing, the court requested that the parties agree to conditions for the injunction, draft an order reflecting those conditions, submit the writing to the court for it to be signed, and have it entered on the docket as an enforceable order. Unfortunately, this order was never received by the judge, signed by the court, or entered on the docket.

After the injunction hearing, Baird cashed a $25,000 CD and spent its proceeds. When it was discovered that Baird had cashed the CD, the court claimed that Baird had dissipated corporate assets in violation of the injunction proceeding, and, accordingly, instituted contempt proceedings. A contempt hearing was held, which Baird attended, where the court found Baird in civil contempt. He was ordered to replace the $25,000.00 within two weeks. When the two weeks expired, and Baird had failed to pay the $25,000.00, another hearing

was held. After hearing arguments, the court placed Baird in custody. Baird now appeals from the contempt order and presents the following issues for our review:

(1) Was there a legal and/or binding order barring appellant's allegedly contumacious conduct when he negotiated a $25,000.00 certificate of deposit on March 8, 1994;

(2) Did appellant receive adequate notice of the alleged "order" of January 11, 1994; and

(3) Was there substantial, competent evidence before the trial judge from which he could have been convinced beyond a reasonable doubt that the alleged contemnor had the present ability to comply?

The right to punish for contempt is adherent in all courts. *Appeal of Levine,* 372 Pa. 612, 95 A.2d 222 (1953). It is a power "essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Fisher v. Pace,* 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949). In considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge. *Fenstamaker v. Fenstamaker,* 337 Pa.Super. 410, 487 A.2d 11 (1985). The authority of a judge, however, to hold one in contempt, "depriving as it does a person of liberty, is an authority that should be used rarely, and with extreme caution." *In re Matter of Johnson,* 483 Pa. 227, 395 A.2d 1319 (1978).

Civil contempt has as its dominant purpose enforcement of compliance with an order of the court, for the benefit of the party in whose favor the order runs. *C.R. By Dunn v. The Travelers,* 426 Pa.Super. 92, 626 A.2d 588 (1993). The contemnor may eventually purge him/herself by complying with the order. *Id.* When a party complains that there has been noncompliance with a court order, and that the other party should be held in civil contempt, the complaining party bears the burden of proving the contempt by a preponderance of the evidence. *Id.* at 100, 626 A.2d at 592.

It is well-settled that there are certain elements necessary to support a finding of civil contempt, namely: that the

contemnor had notice of the specific order or decree which he disobeyed; that the act constituting the contemnor's violation was volitional; and that the contemnor acted with wrongful intent. *Fenstamaker v. Fenstamaker,* 337 Pa.Super. at 415–16, 487 A.2d at 14. The notice requirement may be fulfilled when the contemnor has actual knowledge of the order, despite never having been personally served with the order. *Id.* at 417, 487 A.2d at 15. Additionally, in cases where the contemnor has this actual knowledge, he/she must also have a reliable authoritative basis for believing that he/she could be held responsible for a failure to comply with the order. *Neshaminy Plaza II v. Kelly,* 21 Pa.Commw. 469, 346 A.2d 884 (1975) (contempt citations dismissed when alleged contemnors were served with an informal copy of a judge's order where mere initials appeared at the place provided for the judge's signature on the copy).

 "To be punished for contempt, a party *must* have violated a court order." *C.R. By Dunn,* 426 Pa.Super. at 100, 626 A.2d at 592 (emphasis added). In order to support a finding of contempt, the order or decree which the contemnor has been held to have violated, must be *definite, clear, and specific*—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. *Fenstamaker, supra.* Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. *C.R. By Dunn, supra.* In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. *Id.* Additionally, the mere showing of noncompliance of a court order or misconduct, is never sufficient, alone, to prove contempt. *Commonwealth v. Washington,* 466 Pa. 506, 353 A.2d 806 (1976).

In *Weingrad v. Lippy,* 300 Pa.Super. 76, 445 A.2d 1306 (1982), where counsel was cited for contempt of court because he failed to promptly arrive in chambers for points for charge, appellant-counsel contended that because the trial judge's "request" was not in the form of an "order or decree" and

because counsel did not receive any written notice of any order or decree, that the court order did not comply with the notice requirement supporting a finding of contempt. In dicta, however, this court mentioned that because the trial court judge stated in open court that he wanted counsel promptly in his chambers at a specified time to go over certain points for charge, the judge's attempt to be clear concerning his directive to counsel would satisfy the contempt criteria of which appellant complained. *Id.* *See also In 're Matter of James,* 323 Pa.Super. 149, 470 A.2d 174 (1984) (appellate court affirmed the finding of contempt of an attorney, where there was no written order or decree, because attorney's failure to appear in court with a brief, after having told the judge he would appear at a certain time, demonstrated the requisite wrongful intent to support a finding of contempt).[1]

The dicta in *Weingrad,* however, does not alter the fact that a party may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced. In *Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976), a child welfare agency could not be held in contempt of an order directing an agency to commit a child to a "suitable shelter,"

1. While the trial court could not have held Baird in violation of an oral order because he was never in the presence of the court on the day of the injunction hearing, it is important to note the line of cases that uphold contempt citations based upon the violation of oral orders or directives. The majority of these cases involve an attorney as the contemnor.

In his dissenting statement in *In re Matter of Johnson,* Justice Pomeroy recognized how an attorney, as officer of the court, holds a special, fundamental relationship with the court. Specifically he stated, "[i]t is axiomatic that lawyers are officers of the court admitted to office on taking the statutory oath . . . to behave with all good fidelity to the court as well as to the client." *In re Matter of Johnson,* 467 Pa. 552, 563, 359 A.2d 739, 745 (1976), *citing In re Schofield,* 362 Pa. 201, 204 n. 1, 66 A.2d 675, 677 n. 1 (1967). *See also Commonwealth v. Haefner,* 470 Pa. 392, 368 A.2d 686 (1977) (holding that lay person cannot be held to have committed criminal contempt, when defendant's answer of prosecutor's question contained material which court had ruled inadmissible because a court "cannot expect a layman to interpret questions as if he were an attorney"); *Appeal of Levine,* 372 Pa. 612, 95 A.2d 222 (1953) (Jones, J., dissenting) (a contempt by an attorney is relatively more culpable than that of a layman, so also is the punishment, as an attorney has violated his oath and this demands that a court more carefully scrutinize the injustice that was done).

where the court order did not communicate with sufficient clarity the fact that facilities other than the chosen shelter would be considered suitable, and where the order neither suggested alternatives to the chosen shelter, nor excluded the chosen shelter. The *Carros* court opined that the trial court order omitted vital terms which would have instructed the alleged contemnor as to what the term "suitable shelter" exactly meant. In fact, this court acknowledged that even though the contemnor was fully aware of legislative acts that recommended certain social work principles for placement of children in shelters, the trial court could not simply state that the mere words of "suitable arrangements" would indicate exactly the type of custodial care which the court intended the appellant to provide.

The trial court, in the instant case, has hyperextended the rule of *Weingrad,* and, as a result, contravened the premise in *Carros* by holding Baird in contempt. The transcribed testimony from the contempt petition proceedings reveals testimony completely contradictory from statements made in the trial court's opinion. Specifically, the trial court stated that Barry Harvis "had informed John Baird that he was not to cash either of the CD[']s." The actual testimony presented by Harvis, however, was that he had informed Baird that "the status quo should be maintained [and], that no *corporate assets* should be dissipated." This actual notice, given by Harvis to Baird, mentions nothing of the disposition or state of the CDs of which Baird was held to have dissipated in violation of a court order. For these reasons, Baird did not have "actual knowledge from a reliable, authoritative basis, for believing that he could be held in contempt." *Neshaminy Plaza II, supra.*

In addition to the fact that Baird was not given the requisite notice by Harvis, he was also not afforded the benefit of a clear, definite, and specific court order or decree stating that he was not to dissipate the CDs. The trial court justifies its finding of contempt, based upon an unwritten court order, by stating that because Baird was not expecting any written order from the court, he cannot claim lack of notice as a

defense to his contempt finding. The trial court's reasoning, however, is circular and unsupported. There are no cases that stand for the proposition that if a party does not expect a court order, then he or she, in effect, waives any right to notice of that order before a contempt violation will issue.

In the instant case, the trial court never docketed *any* order, whether in general or specific terms, indicating what assets Baird could and could not dissipate. The only guidance given to Baird was an oral recitation of the injunction hearing proceedings. This message, relayed by Harvis, was similar to the *Carros* instruction in that it failed to include such operative terms as CD, which "would have indicated to [Baird] that more was expected than merely an attempt to" refrain from dissolving corporate assets. *Cf. Landman v. Royster*, 354 F.Supp. 1292 (1973) (relied upon by *Carros* trial court) (contempt conviction upheld when contemnors violated a written injunction order that contained *explicit* terms prohibiting defendants from entering into certain acts).

One may subjectively conclude that the trial court properly held Baird in contempt due to the fact that appellant was an educated businessman who most likely knew that his act of cashing in a $25,000 CD was not in accordance with a suit brought against him for stealing corporate funds. As stated in *Carros, supra*, however, even if the court leaves its order in the most general terms in order "to avoid usurping the judgment of . . . [trained individuals in a business]," a court cannot conclude that the actions of the alleged contemnor and that of the court will be identical—namely that Baird will refrain from cashing the CD.

The trial court clearly abused its discretion by holding the defendant in contempt of an injunctive order which not only failed to recite the specific act which a defendant was prohibited from committing, *Carros, supra*, but which also was never reduced to a formal order—never signed by the trial judge and never entered on the docket. Additionally, Baird was neither present at nor represented at the injunction hearing so that the requirement of actual knowledge of the unwritten order was fulfilled. *Fenstamaker, supra.* Accordingly, Baird

cannot have been proven to have committed contempt by a preponderance of the evidence, *C.R. By Dunn, supra.*

Order reversed.

HOFFMAN, J., files a Dissenting Statement.

HOFFMAN, Judge, dissenting:

I respectfully dissent. I would affirm on the basis of the Trial Court's March 14, 1995 Opinion.