**Beeler v. Beeler-Rosensteel**

*Paul Minnich,* for plaintiff.
*Art Becker,* for defendant.

GEORGE, *J.,* December 13, 2005—This matter comes before the court on the defendant's motion to enforce settlement agreement. After testimony taken during a hearing held on November 18, 2005, this matter is ripe for disposition.

The history of this litigation begins on June 9, 1999, when Robert Beeler filed a complaint in divorce and for equitable distribution against his wife, Sandra Beeler (Rosensteel).[1] The contentious nature of this litigation became apparent on June 7, 2000, when Rosensteel filed a petition to prevent dissipation of the marital assets. The dispute over the marital assets apparently resolved itself temporarily with the parties entering into a property separation agreement and consenting to divorce. By decree entered December 29, 2000, the parties were divorced.

---

1. During the pendency of this litigation, Sandra Beeler subsequently remarried and is now known as Sandra K. Rosensteel.

By that same order, the property settlement agreement was incorporated, but not merged into the divorce decree.

Unfortunately, the parties' divorce did not permanently resolve this dispute. On July 17, 2001, Rosensteel filed a petition for special relief claiming that Beeler breached the property separation agreement. A hearing on the petition was promptly scheduled; however, the parties, through counsel, requested that the hearing be continued at the call of either party to allow the parties the opportunity to negotiate a settlement. It is unclear from the record as to whether the issues raised by the petition were resolved. Nevertheless, on June 11, 2002, Rosensteel filed a second petition for special relief, once again alleging breach of the property separation agreement. A truce was reached on November 14, 2002, when the parties entered a stipulation, confirmed by order of court, which addressed the issues raised.

This truce was short-lived, however, when on May 8, 2003, Rosensteel filed a third petition for special relief seeking the court to direct Beeler to make payment pursuant to the previous agreement and to answer certain interrogatories concerning documentation related to the enforcement of the original property separation agreement. A conference between the parties was promptly conducted by the Honorable Judge Robert Bigham, which resulted in the scheduling of a hearing. Prior to the hearing, the parties resolved the dispute, once again, and entered a stipulated order on August 13, 2003.

Unfortunately, the litigation continued when Rosensteel filed a petition for contempt on May 31, 2005, claim-

ing that Beeler violated the various orders of court previously entered in this matter. On June 27, 2005, Beeler filed an answer and new matter to the petition for contempt. Rosensteel responded on July 15, 2005, by filing a document titled "Defendant's Reply to New Matter and New Matter." In an effort to control the escalating litigation, Judge Bigham scheduled a hearing for July 18, 2005. This attempt was short-lived when on the date of the hearing, Rosensteel filed a motion in limine seeking to preclude the presentation of certain evidence by Beeler.

The proceeding held on July 18, 2005, generated an order of court scheduling a hearing for July 29, 2005. The order also addressed the scheduling of the other issues recently raised by Rosensteel.

At the commencement of the hearing on July 29, 2005, Judge Bigham offered the parties an opportunity to continue negotiations toward a comprehensive settlement of the issues. After a recess of approximately four and a half hours, the parties returned before Judge Bigham and entered a discussion on the record, which resulted in the cancellation of further proceedings that day. Thereafter, on August 17, 2005, the court conducted a telephone conference with counsel that was placed on the record. However, the parties were unable to subsequently reduce these discussions to a written settlement agreement, and settlement was not consummated.

In an attempt to resolve the impasse, Judge Bigham scheduled a conference on September 1, 2005. Despite Judge Bigham's herculean effort to end the litigation, the dispute continued. On September 20, 2005, Rosensteel filed another petition for contempt alleging that

Beeler violated the stipulated order allegedly entered into on July 29, 2005. On that same date, Judge Bigham recused himself on the basis that the petition involved the interpretation of discussions in which he had participated. Thereafter, a contempt hearing was scheduled before this Judge on October 21, 2005.

After reviewing the record, and before the commencement of the hearing on the contempt petition, I noted that the July 29, 2005 discussions, while conducted on the record, were not reduced to a court order. Accordingly, the petition for contempt was dismissed without a hearing because there was no specific court order to enforce.[2]

Following the dismissal of the contempt petition, Rosensteel filed a motion to enforce settlement agreement on October 27, 2005. In that motion, Rosensteel claims that during the proceeding before Judge Bigham on July 29, 2005, the parties reached a settlement agreement resolving all outstanding issues between the parties. Rosensteel further alleges that the agreement was

---

2. In order for "a person to be found in civil contempt, the moving party must prove that: (1) the contemnor had notice of the specific order or decree that he disobeyed; (2) the act constituting the violation was volitional; and (3) the contemnor acted with wrongful intent." *Gunther v. Bolus,* 853 A.2d 1014, 1017 (Pa. Super. 2004). The specific order "alleged to have been violated 'must be definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct.' " *Id.* (quoting *Marian Shop Inc. v. Baird,* 448 Pa. Super. 52, 56, 670 A.2d 671, 673 (1996)). Importantly, orders which form the basis for civil contempt must be strictly construed with any ambiguities or omissions in the order being construed in favor of the defendant. *C.R. by Dunn v. The Travelers,* 426 Pa. Super. 92, 100, 626 A.2d 588, 592 (1993).

further defined and confirmed during discussions before Judge Bigham on August 17, 2005. She now asks this court to enforce the terms of that agreement. Beeler, on the other hand, argues that settlement was never achieved and the discussions constituted nothing more than settlement attempts. Thus, the issue before the court is whether the July 29, 2005 and August 17, 2005 discussions evidence an enforceable agreement between the parties.

Our Supreme Court has recognized that the "enforceability of settlement agreements is governed by [the general] principles of contract law." *Mazzella v. Koken,* 559 Pa. 216, 224, 739 A.2d 531, 536 (1999). Therefore, "[t]o be enforceable, a settlement agreement must possess all of the elements of a valid contract." *Id.* It is essential to the enforceability of a settlement agreement that "the minds of the parties should meet upon all the terms as well as the subject-matter of the [agreement]." *Onyx Oils and Resins Inc. v. Moss,* 367 Pa. 416, 420, 80 A.2d 815, 817 (1951). Accordingly, a settlement agreement will be enforced where the parties have agreed to all the material terms of the bargain. *Mazzella,* 739 A.2d at 537. On the other hand, an agreement is unenforceable where "there exists 'ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce . . . .'" *Id.* (quoting *Miller v. Clay Township,* 124 Pa. Commw. 252, 256, 555 A.2d 972, 974 (1989)).

Although the court accepted testimony on whether an agreement existed, the court also has the benefit of transcripts of the discussions that Rosensteel claims form the basis of the agreement. The July 29, 2005 transcript

indicates that at the beginning of the proceedings, Judge Bigham advised each of the parties that they were going to place "this on the record." He further indicated that at the conclusion of their discussions, he would confirm whether each of the parties agreed. Thereafter, Rosensteel's counsel outlined the following:

"(1) Robert Beeler agrees to pay to Sandra Rosensteel the sum of $500,000 payable as follows: $100,000 within 14 days of today; $150,000 on or before December 15, 2005; $140,000 on or before July 15, 2006; $110,000 on or before December 30, 2006.

"(2) As security for these payments, Robert Beeler agrees to sign four judgment notes, one for each payment, payable on demand after the date referenced in 1 above. Interest will accrue at a rate of 6 percent after the date referenced in 1 above. . . .

"(3) After each payment is made, Sandra will return the original note to Mr. Beeler. . . .

"(4) Within five days counsel for [Rosensteel] will prepare and send to counsel for Mr. Beeler a comprehensive settlement agreement and four judgment notes for review and signature. This agreement will contain the following additional terms and/or contingencies:

"(a) Sandra agrees to release Robert Beeler, Beeler Box, Beeler name, Atlas Container Corporation and each of Atlas' subsidiaries and Peter Sentinary from any—, and their accountants and lawyers from any and all liability of any nature whatsoever. . . .[3]

---

3. Later discussion included Paul Sentinary in this release.

"(b) Robert Beeler, Beeler Box, Atlas Container, and all their subsidiaries, Peter Sentinary, Paul Sentinary agree to release Sandra and her accountants and lawyers from any and all liability in this matter whatsoever.

"(c) Robert Beeler assumes responsibility for and/or liability for tax accounting fees, legal fees, expenses, etc., for Beeler Box and/or Beeler name except for the capital stock franchise tax, which issue is reserved and excepted from this order . . . . The issue of how the loss will be taken is also excepted and reserved from this order." July 29, 2005 Transcript, pp. 3-6.

Following the foregoing discussion, Rosensteel's counsel represented that Rosensteel would, as part of the agreement, withdraw their request for sanctions and reimbursement of legal fees and endorse any stock certificates owned by Rosensteel to Beeler and/or Beeler Box Company and/or Beeler Name Company. The parties also confirmed that the court would retain jurisdiction over the agreement and that Pennsylvania law would apply.

The court's effort to define the parameters of the agreement is apparent when the court asked the parties whether there was "anything else" at the end of the foregoing discussion. In response, Beeler's counsel indicated "we are agreed that you said four separate notes, each one to be released as that payment is made." Thereafter, each party indicated that they accepted the representations made to the court.[4]

---

4. During this conclusory discussion, Judge Bigham also stated "I am positive that the lawyers, after today, still have to go put some paperwork together and do stuff pursuant to what they are going to say. So I expect that to be done in the spirit *in which the agreement is entered into here today* . . . ." (emphasis added)

When the parties conducted the telephone conference on August 17, 2005, the transcript reveals preliminary discussion concerned the meaning of "judgment notes" as previously discussed during the July meeting. It appears, prior to the phone conference, that Beeler was objecting to a confession of judgment clause in the notes. A reading of the entire transcript from August 17, 2005, indicates, however, that the parties previously understood that the notes from Beeler to Rosensteel would contain confession of judgment clauses.[5]

Accordingly, this issue resolved itself.

The August 17, 2005 conference also revealed the crux of the current dispute. Despite the unequivocal language of the July 29, 2005 discussion, Beeler subsequently desired that the written agreement reflect that payments be made to Rosensteel from the Beeler Name Corporation and/or Atlas Corporation rather than from Beeler. During discussion concerning this issue, concerns were expressed involving the timing of the first payment to Rosensteel as it related to the dissolution of the Beeler Box Corporation. Although an agreement was generally reached concerning the timing issue, the issue as to who would make the payments to Rosensteel remained in dispute.[6]

_____

5. At the hearing before this court, Beeler's testimony indicated that there was no confusion concerning this issue. Specifically, Beeler acknowledged that the notes were intended to mean that the "notes could be placed on his property" if payments were missed.

6. A reading of the transcripts, as well as testimony presented at the hearing to enforce the settlement agreement, revealed that Beeler may obtain tax benefits by having the payments come from third-party corporations, rather than through him directly. Rosensteel's concern, how-

After a thorough review of the transcripts in this matter, as well as considering the testimony presented at the hearing, I am convinced that the parties reached a valid contract on July 29, 2005. The specificity of that discussion clearly reflects agreement concerning all material terms of the settlement. In fact, the discussion was so thorough that the parties agreed to reserve two subject areas for further discussion.[7] The agreement sets forth a specific amount of payment, specific dates of payment, interest provisions and other indications of a detailed agreement. The agreement further sets forth an unambiguous description of the person to whom payments would be made to and from, as well as releases of a number of specifically identified entities. Both parties affirmed the terms. In fact, evidence at the hearing established that pursuant to the discussions, Beeler executed and delivered notes to Rosensteel in amounts identical to the amounts discussed on July 29, 2005.

I find nothing vague or ambiguous about the terms of the agreement reached during the July 29, 2005 discussion. The fact that the agreement was never reduced to writing is immaterial. Pennsylvania law has long recognized that the "inability of the parties to an oral agreement to reduce such agreement to writing after several attempts does not necessarily preclude a finding that the

---

ever, was based upon her future ability to collect the agreed-upon payments. Apparently, there is some indication that the entities from whom Beeler wished payment to be made are suffering financial distress.

7. At the hearing on November 18, 2005, the issues related to the capital stock franchise tax and assignment of the loss have been resolved.

oral agreement was enforceable." *Mazzella,* 739 A.2d at 536, citing *Woodbridge v. Hall,* 366 Pa. 46, 48, 76 A.2d 205, 206 (1950).

I further find that Beeler's claim that he did not understand the meaning of judgment note as including a confession of judgment clause is nothing more than a red herring. As mentioned above, during the August 17, 2005 phone conference, Beeler's counsel acknowledged as much. Indeed, the term "judgment note" is a term of art and defined by Black's Law Dictionary as a "promissory note . . . embodying an authorization to an attorney, or to a designated attorney, or to the holder, or the clerk of court, to enter an appearance for the maker and confess a judgment against him for a sum therein named, upon default of payment of the note." The record in this matter reflects Beeler to be a person well versed in corporate, commercial and business dealings. For him to claim that he misunderstood the meaning of this term is incredible. Moreover, he testified under oath as to his understanding of the meaning of judgment note, which, incidentally, is essentially identical to the definition contained in Black's Law Dictionary.

At the hearing, Beeler also raised, for the first time, a claim that he did not hear what was being said to Judge Bigham on July 29, 2005, and, thus, did not understand that payments were to be made directly from him to Rosensteel. I am unpersuaded by this argument. A reading of the July 29, 2005 transcript reveals that Beeler actively participated in those discussions. Moreover, the transcript evidences that Beeler had no reservations in speaking up when he was unable to hear the statements

made by Rosensteel's counsel. Thus, it is inconsistent to suggest that he failed to hear the critical terms of the agreement and remained silent. Importantly, at the conclusion of the discussion, Beeler, in response to an inquiry from Judge Bigham, indicated that everything was fine. Therefore, I reject his claim as incredible.

The essence of this dispute is that Beeler entered into an agreement which he subsequently discovered does not inure to his benefit to the extent he may have originally hoped. Entering into a bad agreement, however, is not a legal basis for overturning an agreement or escaping from the liabilities assumed by an agreement. See *Mowry v. McWherter,* 365 Pa. 232, 238, 74 A.2d 154, 157 (1950) (where parties, sui juris, enter into an unambiguous agreement, with knowledge of the facts, the courts will not relieve them of their contractual obligations because of the questionable wisdom of the bargain). Moreover, a cursory review of the history and record in this matter reveals substantial concessions on the part of Rosensteel as consideration for the agreement reached between the parties. The agreement, therefore, will be enforced.

In styling an enforcement order, I note that all parties have agreed that both would receive tax benefits through the dissolution of the Beeler Name Corporation prior to the initial payment to Rosensteel. This agreement was memorialized by the August 17, 2005 transcript of the telephone conference before Judge Bigham. Accordingly, the dissolution of the Beeler Name Corporation will be ordered.

For the foregoing reasons, the attached order is entered.

## ORDER

And now, December 13, 2005, the court further finds that the terms of the settlement agreement are accurately set forth in the settlement agreement prepared by Rosensteel's counsel and forwarded to Beeler's counsel by correspondence dated August 2, 2005. A copy of said agreement is identified as exhibit C in the defendant's motion to enforce settlement agreement. Accordingly, it is ordered:

(1) The plaintiff and the defendant are bound by the terms of the settlement agreement attached to the defendant's motion to enforce settlement agreement as a part of exhibit C with the exception that paragraph 1a is modified to reflect that the first payment of $100,000 from Robert Beeler to Sandra Beeler shall occur within 24 hours following the dissolution of the Beeler Name Corporation as set forth hereinbelow. The agreement is further modified to reflect that interest of 6 percent on the initial $100,000 payment shall be payable from Robert Beeler to Sandra Rosensteel commencing September 1, 2005. Additionally, paragraph 1b of that agreement is modified to reflect that the second payment of $150,000 due on or before December 15, 2005, shall be due on or before December 27, 2005, rather than December 15, 2005, as set forth in that agreement. Interest payment at the rate of 6 percent shall accrue on that amount on December 27, 2005.

(2) Within 10 days of the date of this order, Robert Beeler shall execute judgment notes to Sandra Rosensteel in the form set forth in exhibit C of the defendant's motion to enforce settlement agreement. The notes reflect-

ing payments in the amounts of $100,000 and $150,000 shall be modified to reflect the modifications to the settlement agreement set forth in paragraph 1 hereinabove.

(3) Within 14 days of the date of this order, Robert Beeler shall dissolve the corporation, Beeler Name Corporation. Sandra Rosensteel shall cooperate in executing all documentation necessary to dissolve the corporation.

(4) The terms of the settlement agreement as referenced, set forth and modified hereinabove by this order are incorporated as part of this order. Either party's failure to strictly comply with the terms of the agreement and this order shall subject that party to sanctions including the finding of contempt.

(5) All pending motions for contempt and/or sanctions are dismissed as withdrawn.