## Deesch v. Perdon Associates

*Robert Scandone,* for appellants Perdon Associates Inc. and Norwood.

*Stephen L. Needles,* for appellee Borough of Morrisville.

RUBENSTEIN, *J.,* December 19, 2007—Appellants Perdon Associates Inc., and Quincey Norwood appeal from this court's order of September 18, 2007, denying their motion for an adjudication of civil contempt against the Borough of Morrisville for violation of the order entered by this court on March 15, 2007.

## PROCEDURAL AND FACTUAL BACKGROUND

A class action lawsuit was commenced by the residents of the Cambridge Crossing/Melvin Court subdivision in Morrisville, Bucks County, on March 1, 2000, against the principal developer, Perdon Associates Inc. and its president, Quincey Norwood. Thirteen other defendants and/or additional defendants were also named in this lawsuit.

In 1993, Perdon Associates Inc. entered into a written development plan improvement agreement with the Borough of Morrisville and the Morrisville Borough Council to construct the Cambridge Crossing residential subdivision, also known as Melvin Court, located in Morrisville, Bucks County, Pennsylvania. After the Cambridge Crossing subdivision was substantially completed in December 1998, Perdon began selling the subdivided lots to the public. (See additional defendant's memorandum contra motion of defendant to enforce mutual release and settlement agreement.)

On August 14, 1999, after a "100 year storm," a devastating flood occurred at Cambridge Crossing which resulted in severe damage to many of the residents' homes and associated property. *Id.* Plaintiffs also allegedly experienced additional flooding on September 16,

1999, because of Hurricane Floyd. Asserting that the flooding resulted from an improperly sized and constructed drainage and retention basin which led to excessive storm water discharge, the Cambridge Crossing residents sought relief by filing a class action lawsuit against Perdon, the principal developer, and several other defendants, including Elmtree Inc., Patrick Flannagan, McGrath Construction, Pickering, Corts and Summerson Inc. and Taylor, Wiseman and Taylor. These other defendants were essentially subcontractors and engineers involved with the design, construction, and/or completion of the Cambridge Crossing subdivision. (*Id.;* see generally, plaintiffs' complaint.)

In their original complaint, plaintiffs alleged negligence (Count I), nuisance (Count II), negligent performance of contract (Count III), and breach of warranty against all defendants (Count IV). (See *id.*) Count II, nuisance, was subsequently withdrawn with the filing of an amended complaint on August 22, 2000. (See plaintiffs' amended complaint.)

On April 27, 2000, Perdon Associates Inc. and Quincey Norwood obtained a writ to join the Borough of Morrisville, Steven Ronzano, Lawrence J. Kerrigan, Pennoni Associates Inc., La Piazza Azzura Inc., and Antonio Mannino as additional defendants. (Defendants' writ to join additional defendants.)

On April 24, 2001, Perdon Associates Inc. and Quincey Norwood filed a joinder complaint against the additional defendants, in which it alleged that neighbors Ronzano and Kerrigan constructed a fence with Borough of Morrisville's approval that "acted as a dam, causing

and/or greatly exacerbating the alleged flooding at Cambridge Crossing." The joinder complaint also alleged that the Borough of Morrisville placed a grate on the discharge basin causing it to clog which "severely exacerbated the alleged flooding at Cambridge Crossing," and that in 1997, the La Piazza Azzura Plaza (an adjacent shopping center) improperly diverted surface water from its "natural drainage contours" and "unreasonably and unnecessarily increased the quantity of water discharged upon Cambridge Crossing during the alleged flood at issue." (Defendants' joinder complaint.)

On June 18, 2001, additional defendants, Antonio Mannino and La Piazza Azzura Inc., filed a writ to join William G. Major Associates Inc., an engineer, as an additional defendant. The complaint to join additional defendant, William G. Major Associates Inc., was subsequently filed on October 9, 2001, and asserted counts for breach of contract, negligence and breach of warranty. (Additional defendants' complaint to join additional defendant, William G. Major Assoc. Inc.)

After a protracted series of cross claims, counterclaims, replies, preliminary objections, motions, hearings and orders, the parties expressed interest in entering into mediation before the Honorable Robert J. Mellon of this court. (Letter from Darin R. Morgan, Esquire to Honorable Robert J. Mellon of 5/29/03.) Settlement conferences were conducted by Judge Mellon on August 1, 2003 and September 9, 2003, after which the parties indicated that they "reached an agreement in principle to settle the case" and requested a stay of proceedings pending the submission of a written settlement agree-

ment. (Letter from Darin R. Morgan, Esquire to Honorable Alan M. Rubenstein of 9/22/03.)

A stipulation of settlement was then filed on February 2, 2004, and a motion for discontinuance/settlement pursuant to Pa.R.C.P. 1714 was filed on February 17, 2004. This court then entered an order and final judgment of dismissal with prejudice on March 16, 2004, which adopted and incorporated all of the terms of the written stipulation. (Stipulation of settlement; order and final judgment.)

This stipulation provided inter alia that in consideration for the release of "all released claims against all released persons" and a covenant not to sue those released persons, plaintiffs and class members would receive a "settlement fund" of $120,000 which would be placed into an escrow account maintained by plaintiffs' counsel. In addition, the stipulation provided that:

"(3) The Borough of Morrisville, an additional defendant in this action, will modify the storm water management system within 90 days of execution of this stipulation of settlement by, among other things: adjusting or removing part of the storm water grate in the retention basin; creating a large hole in the concrete outlet box; and constructing and/or improving the drainage swale which was put in immediately after Hurricane Floyd in 1999 on the easement between 213 and 215 Melvin Avenue South. The borough will perform these modifications at its own costs of approximately $8,800, and these modifications will be made regardless of whether the court approves this settlement." (Stipulation, pp. 7-9.)

Notice of proposed termination of this court case was sent to the parties on April 21, 2006, but on June 9, 2006, Perdon Associates Inc. filed a petition to enforce the mutual release and settlement agreement against additional defendant Borough of Morrisville alleging that the borough failed to comply with the terms of paragraph 3 of the stipulation, *supra*.

Perdon also asserted in its petition to enforce that "[t]he remedial work referred to in paragraph 3 of the stipulation of settlement was also the subject matter of a related legal action captioned *Perdon Associates Inc. v. Morrisville Borough Council and Morrisville Municipal Authority*, no. 00-04866-24-5" which was "tentatively settled in writing on or about March 28, 2003 under a mutual release and settlement agreement." (Motion of Perdon Associates Inc. to enforce the mutual release and settlement agreement ¶¶5, 6.)

In that case, Perdon had filed a complaint against the Borough of Morrisville and the Morrisville Municipal Authority for violating the original development plan improvement agreement for Cambridge Crossing/Melvin Court, alleging breach of contract, unjust enrichment and wrongful conversion of a letter of credit. The Borough of Morrisville then filed a counterclaim against Perdon for negligence and breach of contract. (See mutual release and settlement agreement.) The mutual release and settlement agreement, however, only resolved the issues between Perdon and the Borough of Morrisville, and on March 25, 2003, the Honorable David W. Heckler of this court issued an order in which "the court now finds generally in favor of defendant Morrisville Municipal Authority and against plaintiff on the complaint." Perdon

filed a motion for a new trial which was denied by the court on June 24, 2003. This case was subsequently terminated on October 11, 2007.

The aforementioned mutual release and settlement agreement "entered into by and between Perdon Associates Inc. and Morrisville Borough Council, on its own behalf and on behalf of the Borough of Morrisville," provided in part:

"For and in consideration of the following payments, concessions and obligations, the borough and Perdon agree to mutually release each other from liability for the claims set forth in the litigation, as more fully set forth herein:

"(1) The borough shall release the sum of $81,756.33 from the proceeds of the letter of credit held in escrow at Fleet Bank since its redemption in 2000, and shall tender to Perdon a check for said amount made payable to 'Quincey Norwood';

"(2) The borough shall apply the balance of the letter of credit escrow funds (approximately $8,884.06) to the cost of the following remedial work to be performed by personnel and/or employees of the borough:

"(a) removal of the concrete outlet box located in the detention basin at the Cambridge Crossing/Melvin Court subdivision; and

"(b) burial of a certain cable conduit at the Cambridge Crossing/Melvin Court subdivision, currently exposed, to its proper depth of 18 inches;

"(3) Within 30 days of the completion of the work described in paragraph (2) above, the borough shall

provide Perdon with a detailed invoice showing all charges for the time and materials related to said work and, after reimbursing itself for said charges from the letter of credit escrow balance, the borough shall release the remainder of said funds by tendering to Perdon a check for said remainder made payable to 'Quincey Norwood.' Borough covenants and agrees that under no circumstances will the cost of said remedial work exceed $5,000;

"(4) The borough will also deposit in its account the previously uncashed "Perdon Associates Inc." certified check for $10,000, originally delivered to the borough on or about January 4, 1999. If and when said check clears, the borough will then issue its own check in the amount of $10,000 to 'Quincey Norwood.' In the event that said check cannot be cashed or otherwise negotiated, the borough's sole obligation under this paragraph (4) shall be the return of the check itself to Perdon, without any further payment from borough; and

"(5) The borough will promptly accept full dedication of all common areas and public improvements in the Cambridge Crossing/Melvin Court development, retroactive to January 12, 1999, as more fully described in the deeds of dedication previously provided to the borough by Perdon. To the extent that new or revised deeds of dedication are necessary, the parties hereto pledge to cooperate in their preparation."

Interwoven into the terms of this mutual release and settlement agreement were the preliminary requirements of the development plan improvement agreement of November 9, 1993, which provided in pertinent part:

"(9) In the event developer establishes both a letter of credit and a cash escrow security account (ESA), the amount of $5,000 cash shall be the minimum amount on deposit with the borough in the ESA account at all times in order to pay for administrative, engineering and legal costs.

"(10) When the amount in the ESA falls below $2,000, then the developer shall deposit an amount sufficient to pay all administrative, engineering and legal costs and fees to maintain the minimum $5,000 balance until the final 10 percent maintenance fund has been released by the council. The borough shall, at the time it issues the certificate of completion to the developer, deliver to the developer a written itemized statement of all such costs incurred by the borough in regard to the work completed together with any remaining balance in the ESA.

"(11) As the borough receives each payment to replenish an ESA which has fallen below minimum levels pursuant to the foregoing paragraphs no. 9 and no. 10 from the developer, the borough shall deduct 5 percent from each payment for administrative costs prior to depositing the payments in the ESA account. However, the borough shall not deduct 5 percent from the initial cash sum which establishes and opened the ESA."

In its motion to enforce, Perdon asserted that the Borough of Morrisville had failed to complete the remedial work referred to in the mutual release and settlement agreement, and had failed to provide "a written itemized statement of the escrow security account, together with any remaining balance in the escrow security account." Thereafter, following a flurry of answers, amended an-

swers and replies, as well as a rule to show cause issued by the Honorable Robert J. Mellon of this court, we issued the following order:

"And now, March 15, 2007, upon consideration of the motion of Perdon Associates Inc. to enforce the mutual release and settlement agreement, it is hereby ordered that:

"(1) Additional defendant Borough of Morrisville shall abide by all terms of the mutual release and settlement agreement entered into by the parties in civil action no. 00-04866-24-5 within 20 days from the date of this order.

"(2) Additional defendant Borough of Morrisville shall also provide Perdon Associates Inc. with an itemized statement of the escrow security account as agreed to by the parties in the development plan improvement agreement.

"(3) It is further ordered that additional defendant Borough of Morrisville shall pay court costs, interest and attorney fees to movant Perdon Associates Inc., as provided in 42 Pa.C.S. §2503(7), the amount to be determined at a further hearing upon petition of Perdon Associates Inc. If Borough of Morrisville complies with the terms as ordered in paragraphs 1 and 2 above, this order of court costs, interests, and attorney fees shall be automatically rescinded."

On April 2, 2007, counsel for the Borough of Morrisville sent documentation to Perdon delineating the borough's compliance with this court's order. Enclosed with the cover letter were inter alia: photographs showing the removal of the concrete outlet box along with

an assertion that the cable conduit had been properly buried to a depth of 18 inches; a check for $3,884.06 made payable to Perdon Associates Inc.; "logs, records, bills, checks and receipts" for the remedial work performed by the borough; and "itemized statements, plus bills, invoices and receipts, showing deposit and withdrawal activity in the Melvin Court/Cambridge Crossing escrow security account from 1993 to present." Also included were copies of the borough's check for $81,756.33 made payable to Quincey Norwood, a letter from the borough to the Bucks County Recorder of Deeds transmitting eight deeds of dedication for the Cambridge Crossing common areas and public improvements, and the borough's check for $10,000 made payable to Quincey Norwood. (Letter from Stephen L. Needles, Esquire to Harry Glosser Jr., Esquire of 4/2/07.)

Perdon replied to the borough on April 11, 2007, and insisted that the borough had not complied with this court's order of March 15, 2007. (Letter from Harry Glosser Jr., Esquire to Stephen L. Needles, Esquire of 4/11/07.) After apparently failing to receive a satisfactory response from the borough, Perdon filed a motion for contempt against the Borough of Morrisville on May 9, 2007.

In its motion for contempt, Perdon claimed that the borough failed to comply with this court's order of March 15, 2007 for the following reasons:

"(a) No itemized statement as directed in the court order of March 15, 2007 was provided. Raw data supplied was both incomplete and not an accurate account-

ing sufficient to determine or calculate what balance remained in the escrow security account.

"(b) No balance check as agreed by the parties in the development plan improvement agreement was provided, even though the raw data forwarded in alleged compliance showed expenditures by respondent in the amount of $16,666.48 and movant had made deposits of $48,400. The raw data and documentation supplied in the alleged itemized statement required in the parties' development plan improvement agreement specifically failed to include all deposits made by movant.

"(c) The logs, records, bills, checks and receipts for man-hours, equipment-hours, material and other costs expended by respondent that were referred to in the respondent's alleged compliance with the detailed invoices in accordance with the parties' mutual release and settlement agreement were for work outside the delineated terms and conditions of the parties' mutual release and settlement agreement and included modifications to grading and other work that did not qualify for deductions to movant's escrow deposit made in accordance with the parties' mutual release and settlement agreement.

"(d) No costs or detailed invoices were provided regarding the removal of the concrete box or any work that was specifically authorized in the parties' mutual release and settlement agreement. Therefore, no costs or invoices were deductible from movant's escrow account because no invoices were provided within the time frame set out in the court order of March 15, 2007." (See motion of Perdon Associates Inc. for contempt ¶5.)

After carefully reviewing the documentation submitted by both parties, and determining that the Borough of Morrisville had substantially complied with this court's order of March 15, 2007, in accordance with the mutual release and settlement agreement and the provision of an itemized statement of the escrow security account, this court denied Perdon's motion for contempt on September 17, 2007.

On October 15, 2007, Perdon Associates Inc. and Quincey Norwood filed a notice of appeal to the Superior Court of Pennsylvania. On October 22, 2007, this court ordered appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellants filed their statement of errors on November 9, 2007.

In their statement of errors appellants assert the following verbatim:

"Because the order appealed from simply denied appellants' motion for adjudication of civil contempt without stating the reasons or findings of fact underlying the order this statement can identify the errors only in general terms pursuant to Pennsylvania Rule of Appellate Procedure 1925(b)(4)(vi).

"The errors complained of on appeal are:

"(1) The trial court abused its discretion in failing to hold the appellee Borough of Morrisville in contempt for violating the court's order of March 15, 2007.

"(2) The findings of fact of the trial court necessary to hold that the Borough of Morrisville was not in contempt

for violation of the order of March 15, 2007, were not supported by substantial evidence.

"(3) The trial court erred in its application of the law to the facts to determine that the Borough of Morrisville was not in contempt for violation of the court's order of March 15, 2007.

"(4) The trial court erred in finding that the appellee did comply with the court's order of March 15, 2007 to 'abide by all terms of the mutual release and settlement agreement entered into by the parties' because the record established as a matter of law:

"(a) Appellee failed to provide a complete and detailed history of work done in connection with the removal of the concrete outlet box located in the detention basin at the Cambridge Crossing/Melvin Court subdivision and burial of a certain conduit at the Cambridge Crossing/Melvin Court subdivision to 18 inches required under the mutual release and settlement agreement; and,

"(b) Much of the documentation for logs, records, bills, checks, labor and other costs allegedly expended by the appellee that was supplied by the appellee in alleged compliance with the March 15, 2007 order was for work done outside of the delineated terms and conditions of the mutual release and settlement agreement and not in connection with the work outlined in the settlement agreement (removal of concrete box and burial of certain cable conduit).

"(c) Appellee placed in evidence only a single invoice, the amount of $769.36, properly attributable to the work within the terms and conditions of the mutual release and

settlement agreement, leaving a balance of the escrow under that release in the amount of $8,114.70. It is undisputed that that balance of the escrow funds established under the mutual release has not been refunded to appellants.

"(5) The trial court erred in finding that the appellee was not in contempt when the evidence of record clearly indicated that the documentation supplied by appellee did not constitute detailed invoices as a matter of law.

"(6) The trial court erred in finding that appellee was not in contempt when the documentation supplied by appellee clearly indicated charges for work done outside of the terms of the parties' mutual release and settlement agreement.

"(7) The trial court erred in finding that the appellee was not in contempt and was in compliance with Item 2 of the March 15, 2007 order directing the appellee to provide appellants with an itemized statement of the escrow security account, as set forth in the development plan and improvement agreement, because the finding was not supported by substantial evidence in the record.

"(8) The trial court erred as a matter of law in finding that the appellee was not in contempt when the appellee failed to return the balance of the escrow security account and where the raw documentation provided by appellee supported expenses incurred by the appellee in an amount of no more than $37,000, thereby leaving a balance in the escrow security account of $10,949.77 belonging to appellants. It is undisputed that this balance has not been returned to appellants.

"(9) The trial court erred as a matter of law in finding the appellee was not in contempt when the appellee failed to return funds in the two escrow accounts legally belonging to appellants.

"(10) As a matter of law, the evidence of record is insufficient to justify a decision that the appellee was not in contempt of the court's order of March 15, 2007."

On December 12, 2007, the Superior Court of Pennsylvania entered a per curiam order transferring this appeal to Commonwealth Court.

This opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## DISCUSSION

The central claim in appellants' statement of errors is that there was insufficient evidence to find that the Borough of Morrisville complied with our order of March 15, 2007, and therefore the borough should have been found in contempt of that order.

"The scope of review of [the Commonwealth Court of Pennsylvania] when considering an appeal from the denial of [a] motion for civil contempt is limited to a consideration of whether the trial court abused its discretion or committed an error of law. *American Federation of State County and Municipal Employees v. Lehigh County,* 115 Pa. Commw. 642, 645, 541 A.2d 46, 47 (1988). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the

action is a result of partiality, prejudice, bias or ill will." *Chadwick v. Caulfield,* 834 A.2d 562, 567 (Pa. Super. 2003).

In applying this standard of review to the instant case, this court first notes that "[i]t is well-settled that there are certain elements necessary to support a finding of civil contempt, namely: that the contemnor had notice of the specific order or decree which he disobeyed; that the act constituting the contemnor's violation was volitional; and that the contemnor acted with wrongful intent." *Marian Shop Inc. v. Baird,* 448 Pa. Super. 52, 55-56, 670 A.2d 671, 673 (1996).

Furthermore,

" '[t]o be punished for contempt, a party *must* have violated a court order.' . . . In order to support a finding of contempt, the order or decree which the contemnor has been held to have violated, must be *definite, clear, and specific*—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. . . . Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. . . . Additionally, the mere showing of noncompliance of a court order or misconduct, is never sufficient, alone, to prove contempt." *Id.* at 56, 670 A.2d at 673. (internal citations omitted) (emphasis in original)

Finally, the Superior Court of Pennsylvania has stated:

"The objective of a civil contempt proceeding is remedial and judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances to compensate the complainant for loss sustained. In civil contempt cases, the complaining party has the burden of proving non-compliance with the court order by a preponderance of the evidence. To be punished for civil contempt, a party must have violated a court order. The order that forms the basis for the contempt process in civil proceedings must be definitely and strictly construed. Any ambiguity or omission in the order forming the basis for the civil contempt proceeding must be construed in favor of the defendant. Where the order is contradictory or the specific terms of the order have not been violated, there is no contempt. . . .

"Generally, '[i]n order to hold one in civil contempt, a five-step process must be followed: (1) a rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute, (4) a hearing on the contempt citation, and (5) an adjudication.' . . . Fulfillment of all five factors is not mandated, however. '[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires no more than notice of the violations alleged and an opportunity for explanation and defense.'

"Civil contempt has as its dominant purpose enforcement of compliance with an order of the court, for the benefit of the party in whose favor the order runs. The contemnor may eventually purge him/herself by complying with the order. When a party complains that there has been noncompliance with a court order, and that the other party should be held in civil contempt, the com-

plaining party bears the burden of proving the contempt by a preponderance of the evidence." *Wood v. Geisenhemer-Shaulis,* 827 A.2d 1204, 1207-1208 (Pa. Super. 2003). (internal citations omitted)

In applying these principles to the instant case and in denying Perdon's motion for contempt, this court concluded that there was no "wrongful intent" or any "volitional violation" on the part of the Borough of Morrisville of this court's order of March 15, 2007.

The record indicates that on April 2, 2007, the Borough of Morrisville provided appellants, Perdon Associates Inc. and Quincey Norwood, with sufficient documentation confirming their compliance with our order.

According to our order, the Borough of Morrisville shall abide by all terms of the mutual release and settlement agreement pursuant to civil action no. 00-04866-24-5 within 20 days from the date of the order, and the Borough of Morrisville shall provide Perdon Associates Inc. with an itemized statement of the escrow security account as agreed to in the development plan improvement agreement.

The terms of the mutual release and settlement agreement pursuant to civil action no. 00-04866-24-5 required the borough to: (1) release the sum of $81,756.33 from the proceeds of the letter of credit in the form of a check payable to "Quincey Norwood"; (2) apply the balance of the letter of credit escrow funds of approximately $8,884.06 to remedial work to be performed by the borough including removal of the concrete outlet box and burial of the cable conduit to 18 inches; (3) provide Perdon with a detailed invoice showing all charges for

said work, and under no circumstances would said work exceed $5,000; (4) provide Quincey Norwood with a check for $10,000 after depositing and clearing a previously uncashed check from Perdon Associates Inc. for $10,000 in its own account; and (5) accept full dedication of all common areas and public improvements.

Each of these five requirements were completed. The record reveals that the borough delivered: (1) a check for $81,756.33 made payable to Quincey Norwood; (2) "logs, records, bills, checks and receipts" for the remedial work performed by the borough; (3) "itemized statements plus bills, invoices and receipts, showing deposit and withdrawal activity in the Melvin Court/ Cambridge Crossing escrow security account from 1993 to present"; (4) a borough check for $10,000 made payable to Quincey Norwood; (5) a copy of the letter from the borough to the Bucks County Recorder of Deeds transmitting eight deeds of dedication for the Cambridge Crossing common areas and public improvements; and (6) a check for $3,884.06 made payable to Perdon Associates Inc.

This court noted that the check for $3,884.06 represented the balance of the letter of credit escrow funds (approximately $8,884.06) after the subtraction of the $5,000 for the cost of the remedial work to modify the concrete outlet box, as agreed to in paragraph 2 of the mutual release and settlement agreement.

Finally, the Borough of Morrisville was required to provide Perdon Associates Inc. with an itemized statement of the escrow security account. The borough subsequently submitted a new "summary of activity" or

itemized statement for the Melvin Court/Cambridge Crossing escrow security account on June 28, 2007. This "summary of activity" reveals each legitimate transaction that occurred within the account beginning on July 29, 1992 and ending on May 31, 2007, and reveals a closing balance of $72. This court also noted that the Borough of Morrisville did not deduct, despite being entitled to do so, its 5 percent administrative fee for each deposit by Perdon to maintain the $5,000 balance in the escrow account while the Cambridge Crossing project progressed.

In consideration of all of these factors, this court did not find that the Borough of Morrisville "volitionally violated with wrongful intent" the terms of our order of March 15, 2007. We therefore denied Perdon's motion for contempt.