**Barbara Linde BOLD, Appellant**

v.

**John BOLD, Appellee.**

Superior Court of Pennsylvania.

Submitted Oct. 2, 2007.

Filed Dec. 4, 2007.

Ronnie J. Fischer, Honesdale, for appellant.

Brian J. Cali, Dunmore, for appellee.

BEFORE: DANIELS, J., McEWEN, P.J.E., and JOHNSON, J.

OPINION BY JOHNSON, J.:

¶ 1 Barbara Linde Bold (Wife) appeals the trial court's order holding her in civil contempt for violating a stipulation and order that restricted the parties' access to the bank accounts of the parties' business, Total Landscaping, Inc., (sometimes "the Corporation"), pending the disposition of their divorce action. Wife contends that the court abused its discretion as the evidence fails to demonstrate that her trans-

fer of corporate funds to her personal account violated any provision of the order. Upon review, we are compelled to agree. Accordingly, we reverse the trial court's order.

¶ 2 This matter arose following Wife's filing of a complaint in divorce on March 23, 2006, seeking equitable distribution of the parties' marital assets. Due to the pending dissolution of their marriage, the parties became unable to work constructively in the conduct of their business. As a result, Husband (John Bold) filed a petition for special relief in the form of an injunction to prevent Wife from dissipating the Corporation's assets. The petition alleged that Wife had sometimes submitted her personal bills to Total Landscaping directing the bookkeeper to prepare checks and pay them, and had sometimes written out such checks and signed them herself. Husband requested that the trial court enjoin Wife from "disposing, transferring, encumbering, concealing, selling, removing or alienating the business known as Total Landscaping, Inc." The trial court scheduled a hearing on Husband's petition and, on July 18, 2006, the parties resolved the matter by stipulation, which the trial court then adopted as an order. The resulting stipulation and order provides, in pertinent part, as follows:

2) It is ... agreed that the parties shall not be able to write any personal expenses from Total Landscaping to cover any of their own individual personal expenses. That will be a prohibition that neither of the parties will need to do. [sic]

* * * *

4) [Total Landscaping office manager] Danielle [Lazaro] will be required to provide copies of all checks written by the corporate entity for and on behalf of corporate expenses for each of the respective parties on a weekly basis, so each party is aware of the fact of all checks that have been written.

* * * *

7) All corporate checks written by either of the respective parties shall be accounted for by the respective parties and provided to Danielle by [a date certain] so an accounting of all outstanding checks written by either of the respective parties can be made to Total Landscaping so the books and records are accurate as to what checks are outstanding as of today's date.

8) The parties shall be required to provide actual accounting to Danielle of any checks that otherwise she is not aware of that have been written and authorized to be sent out to either of the respective parties.

9) All of the checks of the corporation in either of the parties['] possession that are not checks which have been negotiated or written but blank checks that either of the respective parties have and all corporate checks of Total Landscaping that are in the possession of either party or are presently in the corporate office shall be returned to the corporate office if they are in either [party's] possession and shall remain in Total Landscaping's office. All checks shall be under the control of Danielle and shall be returned. All Total Landscaping checks shall remain in the Total Landscaping office under the control of Danielle[,] the office manager.

10) With regards to the checks, Danielle will be responsible for the control of all the checks for Total Landscaping. In addition[,] to clarify[,] Danielle will be opening all of the mail and logging in and copying all of the checks that are being paid to [T]otal

[L]andscaping in addition to any checks written out for Total Landscaping so that each of the parties have check copies of all checks coming in and all checks going out.

11) The parties understand that this agreement is binding upon them and shall be enforced as an Order of this court and any violation of this court Order will subject ... either of the parties [to] contempt and any other sanctions that the court can impose upon the parties as a result of any violation of the agreement.

Stipulation, 7/19/06, at 1–3.

¶ 3 Following the court's adoption of the Stipulation, Wife made three substantial withdrawals from Total Landscaping's account, transferring the withdrawals to her personal account and then writing checks on that account to pay the college expenses of the parties' daughters. Wife did not consult with Husband or with office manager Lazaro before making any of the transfers, which together totaled $45,000. After Wife had made the first two withdrawals, on October 31, 2006, Husband filed a Petition for Contempt and Sanctions asserting that Wife's access of the company accounts had violated the parties' Stipulation and Order by making personal use of company funds. Subsequently, Wife made the third transfer, which underlies this appeal on November 28, 2006. Wife then filed a Cross–Petition for Contempt and Sanctions and the trial court convened a hearing on November 29, 2006. At the hearing, Wife asserted the defense that the money she had transferred was in fact repayment of loan proceeds she had previously advanced to Total Landscaping from her own accounts and that she had made the repayments to herself in the ordinary course of business. Wife argued then, as now, that no provision of the Stipulation precludes repayment or acceptance of loan proceeds and that, consequently, her funds transfers cannot be deemed to violate the Stipulation.

¶ 4 Following the hearing, the trial court, the Honorable Robert J. Conway, determined that Wife's third transfer of company funds was contemptuous, while the first two were not. The court then established Wife's repayment of the final transfer ($20,000) as the necessary prerequisite for purging the contempt. Wife was not able to return the money, whereupon the court found her in civil contempt and imposed a term of incarceration for six months. The court allowed a period of five days prior to execution of the sentencing order in which to file a notice of appeal to this Court. Wife has now filed this appeal, raising the following questions for our review:

1. Did the trial court abuse its discretion in finding a party in contempt of a stipulation and order for requesting and accepting a loan repayment from the parties' business when the stipulation prohibits the parties from writing their personal expenses from the parties' business, there is no specific provision in the stipulation prohibiting either party from accepting a loan repayment, and there was no evidence that the party acted with wrongful intent in directing the loan repayment?

2. Did the trial court abuse its discretion in *sua sponte* finding a party in contempt of a July 2006 stipulation and order for requesting and accepting a loan repayment from the parties' business in November of 2006 when the trial court simultaneously determined that the same party was *not* in contempt for requesting and accepting a loan repayment for the same amount in August of 2006?

Brief for Appellant at 5.

¶ 5 "In considering an appeal from a contempt order, great reliance must be

placed upon the discretion of the trial judge." *Marian Shop, Inc. v. Baird,* 448 Pa.Super. 52, 670 A.2d 671, 673 (1996). Accordingly, "appellate review of a finding of contempt is limited to deciding whether the trial court abused its discretion." *Lachat v. Hinchliffe,* 769 A.2d 481, 487 (Pa.Super.2001).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Id.* (citation omitted)

¶ 6 In support of her first question, Wife contends that the trial court erred in holding her in contempt because no provision of the Stipulation and Order precludes repayment of amounts she had previously loaned to Total Landscaping and that, on the contrary, payments may be made in the Corporation's normal course of business. Brief for Appellant at 15. Wife argues further that "[i]t ... cannot be said that Wife violated any *specific* provision of the stipulation by requesting and then accepting the $20,000 loan repayment in question, as by accepting this loan repayment Wife was not writing personal expenses from Total Landscaping." Brief for Appellant at 15.

¶ 7 Wife's argument relies on the premise that "[t]o be punished for [civil] contempt, a party *must* have violated a court order." *Marian Shop, Inc.,* 670 A.2d at 673. Wife's premise is, of course, correct. Nevertheless, "the mere showing of noncompliance of a court order or misconduct, is never sufficient, alone, to prove contempt." *Id.* "[T]he order or decree which the contemnor has been held to have violated, must be *definite, clear, and specific*—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." *Id.* Moreover, the contemnor must have had notice of the order he disobeyed, the act constituting her violation must be volitional; and she must have acted with wrongful intent. *See id.* "Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant." *Id.*

¶ 8 Regrettably, the trial court failed to provide us with the required Rule 1925(a) opinion to explain the basis for its decision. This omission is puzzling in that the court's determination of contempt finds only one of three withdrawals violative of the Stipulation and Order under circumstances where the record offers no clear basis for differentiation. Moreover, the Stipulation and Order as entered do not establish an unequivocal prohibition of Wife's actions in transferring money from the corporate account for payment of a business debt. Although the petition for injunctive relief Husband originally filed sought to prohibit Wife from "disposing, transferring, encumbering, concealing, selling, removing or alienating the business known as Total Landscaping, Inc.[,]" Husband acquiesced to much less inclusive restrictions in the Stipulation. As reproduced, *supra,* the Stipulation and Order appears only to limit the ability of the parties to write checks from the corporate account to cover "their own individual personal expenses." Stipulation, 7/19/06, at 1. Nothing in the document's terms addresses the payment of a business debt or any form of transfer not reliant upon the use of checks. Although Wife's action might test the *spirit* of the Order given her preceding conduct and Husband's original request for broader relief, we cannot characterize the

Stipulation and Order, as adopted, as so *"definite, clear, and specific"* as to "leav[e] no doubt or uncertainty in the mind of the contemnor" that her conduct in transferring funds to repay a business debt was prohibited. *See Marian Shop, Inc.,* 670 A.2d at 673. This failing is notable in that both parties entered the Stipulation with the benefit of counsel, both of whom, ostensibly, read, understood and advised their clients on the interpretation and application of its terms. To the extent the order could leave any doubt concerning transactions that are not discussed within its four corners, it fails to satisfy the elements of civil contempt. *See id.* (recognizing notice, volitional conduct and wrongful intent as necessary elements for citation of civil contempt). Because we find that Wife is entitled to relief on the basis of her first question presented, we need not discuss her second question.

¶ 9 For the foregoing reasons, we reverse the trial court's order.

¶ 10 Order **REVERSED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**