J. A24037/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| G.J.L., N/K/A G.J.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| D.M.L., | : | No. 896 MDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered May 3, 2018,
in the Court of Common Pleas of Lancaster County
Civil Division at No. CI-13-11919

BEFORE:  OTT, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED FEBRUARY 11, 2019**

D.L. ("Father") appeals from the May 3, 2018 custody order entered in the Court of Common Pleas of Lancaster County which, among other things, granted shared legal custody of J.L., born in August 2008, and E.L., born in August 2012 (collectively, "Children"), to Father and G.J.L., n/k/a G.J.C. ("Mother"); awarded primary physical custody of the Children to Father and partial physical custody to Mother; and disposed of four contempt petitions that Father filed against Mother.[1]  Father also appeals from the March 9, 2018 denial of the oral motion that he made at the parties' custody hearing requesting that Mother be ordered to undergo a psychological evaluation and

---

[1] The record reflects that the May 3, 2018 custody order also disposed of a contempt petition that Mother filed against Father on February 28, 2018, the denial of which Mother does not appeal.

that the custody proceedings be stayed pending the results of that evaluation.

Father further appeals from the August 10, 2017 order that denied his request

for the appointment of a guardian **ad litem** for the Children, as well as his

request that the trial court order Mother and Father to participate in

co-parenting counseling. After careful review, we reverse in part, affirm in

part, and remand.

The trial court set forth the following factual summary:

> [Mother and Father] are divorced. Since the parties' separation in 2013, Father has been the primary caretaker of the minor Children. From [e]arly 2015 through December 15, 2016, Mother experienced a period during which she exercised physical custody on a limited basis. Specifically, Mother only participated in supervised periods of partial physical custody for a few months in 2015. Beginning in December 2015, Mother saw the minor Children on a few occasions until the Court Order was entered by this court on December 15, 2016. Since said Order, Mother has exercised periods of partial physical custody every other weekend and at times during the week.
>
> Mother resides in a two-bedroom townhouse located [in Lancaster]. Mother began living in said residence in April 2016 after returning to Lancaster County following a short period of residence in Las Vegas, Nevada. The Children share a bedroom in Mother's residence. Mother's residence is located in the Manheim Township School District. Mother is employed as a dental hygienist. Mother's hours of employment are variable and flexible inasmuch as she contracts with various agencies at different times. Mother has the ability to schedule her available hours, Monday through Friday, with said agencies.
>
> Father resides in a home located [in Lancaster] with his fiancée, [B.M.] Father's marriage to [B.M.] is scheduled to occur in June 2019. The Children have

their own bedrooms in Father's residence. Father's residence is also located in the Manheim Township School District. Father is a medical doctor, who is currently employed as a pain management specialist in Lebanon, Pennsylvania. Father generally works Monday through Friday from 8:00 a.m. until 4:00 p.m.; however, Father's work schedule is also flexible.

Trial court opinion, 5/3/18 at 6.

The trial court set forth the following procedural summary:

[Mother] initially filed a Complaint in Custody on December 20, 2013 against Father with respect to [the Children]. By order dated January 6, 2014, the court scheduled a custody conciliation conference for February 4, 2014. At the conference held on February 4, 2014, the parties were unable to reach an agreement. Accordingly, the court approved the recommendation of the conference officer and entered an order dated February 27, 2014 granting primary physical custody of the Children to Father and partial physical custody to Mother. The court also scheduled a follow-up conference for May 5, 2014. At said conference, the parties were, again, unable to reach an agreement to settle their disagreements. Accordingly, the court approved the recommendation of the conference officer and entered an order dated May 30, 2014 scheduling an evidentiary hearing for September 9, 2014. The matter proceeded to a Custody Hearing on September 9, 2014. Following said hearing, the court issued an Opinion and Order dated September 24, 2014 granting shared legal custody to the parties; primary physical custody to Father during the academic year; partial physical custody to Mother during the academic year; and, shared physical custody to the parties during the summer. In response to an uncontested motion in the form of a letter sent to chambers, the court entered an order dated October 20, 2014 clarifying the counseling provisions of the September 24, 2014 Order.

On January 29, 2015, Father filed a Counter-Affidavit in response to Mother's proposed relocation to Las Vegas, Nevada with the Children. On January 30, 2015, the court issued an order scheduling a Relocation Hearing for March 26, 2015 and setting forth a briefing relative to the necessity of filing a petition to modify custody. On February 17, 2015, Mother filed a Petition to Modify Custody. Accordingly, the matter proceeded to a Custody Modification and Relocation Hearing on March 26, 2015. The court entered an order on March 26, 2015, directing that neither party remove the Children from Pennsylvania pending a final order.

On March 27, 2015, the court entered an order directing that Mother receive a psychological evaluation by Jerome I. Gottlieb, M.D. On April 3, 2015, the court received a copy of Dr. Gottlieb's report and scheduled a hearing for June 16, 2015 to address the issues raised in Dr. Gottlieb's report regarding Mother's mental health issues. The court further indicated that the purpose of the June 16, 2015 hearing was to consider whether Mother needed further mental health treatment and whether her periods of custody needed to continue to be supervised in nature.

On April 14, 2015, the court issued an order, following the hearing on March 26, 2015, directing that the parties were to share legal custody of the Children; Father was granted primary physical custody; and, Mother was granted periods of supervised partial physical custody. Additionally, the matter involving whether Mother needed further mental health treatment and whether her periods of custody were to continue to be supervised would be addressed at a subsequent hearing on June 16, 2015. By order dated June 16, 2015, the court directed that the parties were to share legal custody of the Children; Father was granted primary physical custody; and, Mother was granted periods of supervised partial physical custody. The court further ordered that Mother was to receive an evaluation and treatment from a board-certified psychiatrist of her choosing and

provide proof of treatment before she could resume periods of unsupervised custody.[Footnote 1.]

> [Footnote 1] This case was originally handled by Judge Leonard G. Brown, III. As of January 1, 2016, this case was reassigned to this member of the trial court to address any subsequent matters.

Mother filed a Petition for Modification of Custody Order on July 25, 2016. By order entered on July 28, 2016, a custody conciliation conference was scheduled for September 6, 2016. On August 23, 2016, Father filed a Petition to Schedule Hearing, which was granted by order dated August 29, 2016 and the custody conciliation conference scheduled for September 6, 2016 was canceled and a hearing was scheduled for November 17, 2016. Due to a conflict in the court's schedule, the Custody Hearing was rescheduled from November 17, 2016 to November 18, 2016. The matter proceeded to a Custody Hearing on November 18, 2016. Following said hearing, which included ample testimony regarding Mother's evaluation and treatment from a board-certified psychiatrist as ordered by the court on June 16, 2015, the court issued an Opinion and Order dated December 15, 2016 granting shared legal custody to the parties; primary physical custody to Father; and, partial physical custody to Mother.

The procedural history relevant to the instant appeal is as follows: Father filed a Petition for Contempt, Modification of Custody, and Special Relief on July 7, 2017. By order entered on July 11, 2017, a custody conciliation conference was scheduled for September 11, 2017 and a Rule was issued upon Mother with respect to Father's Petition for Special Relief. Upon consideration of Father's Petition for Special Relief, and having received no answer from Mother, the court denied Father's request to have the parties participate in co–parenting counseling; granted Father's request that [J.L.] participate in individual counseling; and, denied Father's request for the appointment of a Guardian ***Ad Litem***.

Father filed a Petition for Special Relief on August 4, 2017 to address Mother's scheduled vacation. Following a presentation on said petition in Family Business Court, the court denied Father's Petition for Special Relief and ordered that Mother was permitted to vacation with the Children from August 9, 2017 until August 17, 2017 and, by specific agreement of the parties, Father was permitted to have telephone or FaceTime contact with the Children each day of Mother's vacation at 7:00 p.m.

Father filed another Petition for Contempt on September 7, 2017, which was consolidated with Father's previously filed Petition for Contempt and Modification of Custody Order, and scheduled for a custody conciliation conference on September 11, 2017 by order entered on September 8, 2017. At the September 11, 2017 conference, the parties were unable to reach an agreement. Accordingly, the court approved the recommendation of the conference officer and entered an order dated September 27, 2017 indicating that the prior order dated December 15, 2016 was to remain in effect and scheduled an evidentiary hearing for December 13, 2017.

Father filed another Petition for Contempt on November 21, 2017, which was consolidated with the pending petitions and scheduled for an evidentiary hearing for December 13, 2017.

Father filed a Petition to Disqualify Counsel for Conflict on December 4, 2017. By order entered on December 6, 2017, the court granted said petition. By separate order entered on December 6, 2017, with the agreement of the parties, the court rescheduled the evidentiary hearing from December 13, 2017 to February 2, 2018. Said hearing was rescheduled for March 9, 2018 due to a court scheduling conflict by order entered on January 3, 2018.

- 6 -

Father filed another Petition for Contempt on January 26, 2018, which was consolidated with the Custody Hearing scheduled for March 9, 2018.

Mother filed a Petition for Contempt on February 28, 2018. By order entered on March 6, 2018, the court ordered that a hearing on said petition would be conducted at the same time as the Custody Hearing on March 9, 2018.

The Custody Hearing was conducted on March 9, 2018 relative to Father's Petition for Contempt, Modification of Custody, and Special Relief filed on July 7, 2017; Father's Petition for Contempt filed on September 7, 2017; Father's Petition for Contempt filed on November 21, 2017; Father's Petition for Contempt filed on January 26, 2018; and, Mother's Petition for Contempt filed on February 28, 2018. Following completion of the evidentiary hearing, the court issued a comprehensive Opinion and Order dated May 3, 2018 granting shared legal custody to the parties; primary physical custody to Father; partial physical custody to Mother; and, finding Mother to be in contempt of the prior orders of this court.

On May 30, 2018, Father filed a timely Notice of Appeal to the Superior Court of Pennsylvania relative to this court's Opinion and Order dated May 3, 2018; as well as, a simultaneous Concise Statement of Errors Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2). As such, this matter is ripe for review.

Trial court opinion, 6/29/18 at 1-6.

Father raises the following issues for our review:

I.     Did the [trial] court err when it denied Father's request for a psychological examination of Mother when such evaluation was in the best interests of the Children?

II.    Did the [trial] court err when it denied Father's request for the appointment of a guardian

> > ***ad litem*** as well as Father's request for co-parent counseling thereby limiting Father's ability to prove contested issues of fact?

> > III. Did the [trial] court err when it failed to hold Mother in contempt when she so obviously violated the court's orders?

> > IV. Did the [trial] court err in relying on misstatements of evidence and testimony to support its conclusions as to the best interests of the Children?

Father's brief at 7 (full capitalization omitted).

In custody cases under the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340,

> [w]e review the trial court's custody order for an abuse of discretion. We defer to the trial court's factual findings that are supported by the record and its credibility determinations. However, we are not bound by the trial court's deductions or inferences, nor are we constrained to adopt a finding that cannot be sustained with competent evidence. In sum, this Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings.

> The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being.

***M.G. v. L.D.***, 155 A.3d 1083, 1091 (Pa.Super. 2017), ***appeal denied***, 169 A.3d 522 (Pa. 2017) (internal citations and quotation marks omitted).

Father first contends that the trial court erred when it denied his request for a psychological evaluation of Mother.

Pennsylvania Rule of Civil Procedure 1915.8(a) permits a trial court to order "any party to submit to and fully participate in an evaluation by an appropriate expert or experts" upon its own motion, upon the motion of a party with reasonable notice to the person to be examined, or by the parties' agreement. Pa.R.Civ.P. 1915.8(a).

Here, the record reflects that at the conclusion of Mother's cross-examination at the custody hearing, Father's counsel orally moved for a psychological evaluation due to "concerns about possible competency issues here with [Mother]" and requested a "stay [of] the proceedings pending a psychological evaluation." (Notes of testimony, 3/9/18 at 58-59.) The trial court denied Father's motion. (**Id.** at 59.)

In its Rule 1925(a) opinion, the trial court explained its denial of Father's motion as follows:

> At the time of Father's oral motion in this regard, no testimony had been elicited sufficient to warrant an order directing Mother to undergo a psychological or psychiatric evaluation. Further, it is noted that the parties had not reached any agreement on such request nor had Mother been provided notice that such request would be made on an **ad hoc** basis during the evidentiary hearing. While it was obvious to the court that Mother and a court clerk had heated conversations when Mother would attempt to file petitions in this matter, it was clear to the court that any such disagreements resulted from Mother's misunderstandings of the rules, policies and procedures of the Prothonotary's Office at a time when Mother is representing her own legal interests without the benefit of legal counsel. Additionally, the court observed Mother's demeanor and affect during her testimony. It was apparent to the court that Mother

affirmatively desired the court to hear her "story" from the beginning, which was a predominant and recurrent theme throughout Mother's testimony. Mother would answer questions with a lengthy forward or explanation in an obvious attempt to ensure that the court was presented with her account. Mother's inclination to interject the circumstances surrounding the incidents leading up to the parties' separation and her perceptions of Father's behaviors during their separation was reasonable as she was representing herself at the evidentiary hearing without the benefit of counsel and given her perceived need to provide her entire account to the court.

In denying Father's request for a psychological/psychiatric evaluation, the court determined that Father, in large part, was attempting to re-litigate concerns regarding Mother's mental health, which were previously addressed by this court on multiple occasions. On March 27, 2015, the court entered an order directing that Mother receive a psychiatric evaluation by Dr. Jerome I. Gottlieb. On April 3, 2015, the court received a copy of Dr. Gottlieb's report and scheduled a hearing for June 16, 2015 to address the issues raised in Dr. Gottlieb's report regarding Mother's mental health issues; consider whether Mother needed further mental health treatment; and, consider whether Mother['s] periods of custody were to continue to be supervised. While the court issued an order dated June 16, 2015 granting periods of supervised partial physical custody to Mother, the court also ordered Mother to undergo an evaluation and treatment with a board-certified psychiatrist, which she successfully completed. Subsequently, Mother filed a Petition for Modification of Custody Order on July 25, 2016. Following a lengthy evidentiary hearing on November 18, 2016, during which the court considered ample evidence regarding Mother's evaluation and treatment with a board-certified psychiatrist, the court issued an Opinion and Order dated December 15, 2016 granting a schedule of unsupervised partial physical custody to Mother.

The primary basis of Father's claims involves his subjective concerns regarding the status of Mother's mental health. The issues raised by Father [are] his numerous contempt petitions filed since July 2017 raise the same and/or similar concerns to those which led the court to proceed in the fashion it did in 2015 with respect to Mother's mental health treatment. At the most recent evidentiary hearing, little, if any, recent evidence was presented regarding Mother's purported mental health concerns. Rather, Father has attempted to buttress his current allegations with testimony regarding Mother's prior behaviors. As such, this court firmly finds that any previously unconsidered evidence presented failed to warrant an order for an updated psychological or psychiatric evaluation of Mother, nor would a stay of the instant proceedings be appropriate in a matter where such permanency and consistency is needed for the benefit of these minor Children.

The court is certainly cognizant of the history of the litigation in this matter. Throughout all proceedings in this matter, the court has given much thoughtful consideration to the issues pertaining to Mother's mental health. There can be no doubt that Mother's treatment with Dr. Jingduan Yang, a board-certified psychiatrist, was beneficial for Mother, even though Father refused to recognize or approve of this professional's credentials. The court found Mother's testimony that said treatment was discontinued because of financial issues to be credible and unfortunate. The Court also found Mother's testimony that she continues to employ the treatment techniques previously implemented by Dr. Yang to be credible. Inasmuch as this court believed that further treatment may be of assistance to Mother, the court encouraged Mother to consider resuming counseling with Dr. Yang or another psychiatrist who could provide her insight into coping with the past relationship difficulties. Although the court believed that Mother may benefit from continued counseling, considering the limited nature of any credible recent testimony regarding such matters and the treatment that Mother has successfully completed, the court

> affirmatively concluded that Mother was not so inflicted or impaired to preclude her ability to effectively parent these minor Children. While Father's efforts were, no doubt, grounded in his natural desire to protect the Children, the court found that his current allegations have become overly persistent and are not adequately supported by the record. Stated another way, upon thoughtful consideration of the totality of the evidence presented at all proceedings in this matter, the court affirmatively disagrees with Father's repeated contentions regarding Mother's mental health status.

Trial court opinion, 6/29/18 at 8-11.

The record reflects that pursuant to the trial court's March 27, 2015 order, Dr. Jerome I. Gottlieb performed a psychiatric evaluation of Mother. In his April 3, 2015 report, Dr. Gottlieb opined, within a reasonable degree of medical certainty, that Mother suffers from delusional disorder, an unspecified personality disorder, and at the time of the evaluation, was functioning at 60 percent. (Psychiatric report of Dr. Gottlieb, 4/3/15 at 11-12.) Dr. Gottlieb explained that "[u]nder the DSM-V,[2] a Delusional Disorder is an individual with a delusion(s) (false belief that does not respond to reasoning or facts). 'Apart from the impact of the delusion(s) or its ramifications, functioning is not markedly impaired, and behavior is not obviously bizarre or odd.'" (**Id.**) Dr. Gottlieb noted that the medical records from Mother's involuntary psychiatric hospitalization in November 2013 "are entirely consistent with this diagnosis." (**Id.** at 12.) Dr. Gottlieb stated that "[u]nfortunately, a Delusional

---

[2] Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition.

Disorder is difficult to treat. It may or may not respond to antipsychotic medication. In the current instance, [Mother] will be highly resistant to treatment because she does not believe she has any psychiatric problems." (*Id.*) With respect to Mother's unspecified personality disorder, Dr. Gottlieb noted that "it does not fit into any one category," but Mother "has developed a long-standing maladaptive pattern of suppressing her emotions, particularly anger." (*Id.*) Regarding Mother's treatment, Dr. Gottlieb concluded that "at the very least, [Mother] needs to be involved in individual therapy over a long-term basis. In addition, she needs to be followed by a psychiatrist over time. She does not require in-patient hospitalization at this time. She may benefit from a low-dose antipsychotic, such as Risperdal (she took this during her brief hospital stay)." (*Id.*)

The record further reflects that the trial court scheduled a hearing for June 16, 2015, "to consider whether Mother is in need of further mental health treatment and whether her periods of custody shall be supervised." (Order of court, 4/14/15 at 1.) We note that the June 16, 2015 hearing transcript is not in the certified record before us. Following the hearing, however, the trial court entered an order granting the parties shared legal custody and granting mother partial physical custody, provided that, among other things, Mother receive a psychiatric evaluation before she could begin unsupervised custody and that she undergo psychiatric treatment for "at least 12 months." (Order of court, 6/16/15 at 2.) Absent psychiatric treatment, the trial court required

that Mother's periods of physical custody be supervised. The record indicates that Mother received psychiatric treatment for at least 12 months.

Thereafter, following a hearing on Mother's July 25, 2016 petition to modify custody, the trial court entered an order that granted Mother partial physical custody of the Children, but required that Mother "continue to treat with a board certified psychiatrist and provide Father with a letter from said physician confirming said attendance at counseling every three (3) months." (Trial court opinion and order of court, 12/15/16 at 15, § VI, ¶ A.)

By Mother's own admission, her last psychiatric treatment was in June 2017. (Notes of testimony, 3/9/18 at 39.) Mother stated that she discontinued psychiatric treatment for financial reasons. (*Id.* at 36-37.) Nothing in the record demonstrates that Mother was given leave of court to discontinue psychiatric treatment.

In his brief to this court on this issue, Father avers that:

> [b]ased on his own observations and the statements made by Mother, both on social media and in person, Father has sustained a reasonable belief that Mother is not seeking appropriate treatment to address her mental health issues. By Mother's own testimony at the custody hearing, she ceased treatment with her psychiatrist in June 2017. (R. 576a) Additionally, Mother testified that she believes Father's fiancée is a witch (R. 571a); that she has connections to the government in Clark County, Nevada and in the Federal Government (R. 574a); that secret agents have the same car as she does (R. 571a); that she believes Father and his fiancée do magic (R. 570a); that angels have spoken to her (R. 577a); and that she believes there is something magic and scary about Lebanon, Pennsylvania (R. 578a).

> Immediately after Mother's testimony, counsel for Father requested that the Court stay the proceedings pending a psychological evaluation of Mother. The request was immediately denied. (R. 581a)

Father's brief at 18-19.

The trial court opined that "[t]he primary basis of Father's claims involves his **subjective** concerns regarding the status of Mother's mental health." (Trial court opinion, 6/29/18 at 10 (emphasis added).) It then concluded that "upon thoughtful consideration of the totality of the evidence presented at all proceedings in this matter, the court affirmatively disagrees with Father's repeated contentions." (**Id.** at 11.)

The trial court's conclusion, and its reasons for that conclusion, however, are not sustained by competent record evidence. Although we recognize that Father is a party to this litigation, that Father is not a psychiatrist, and that Father's beliefs regarding Mother's mental health are subjective, we also recognize that the record clearly demonstrates that Mother has a history of mental-health problems that resulted in an involuntary commitment, court-ordered supervised partial physical custody of the Children, and court-ordered psychiatric treatment that she discontinued without leave of court. Furthermore, in his April 3, 2015 report, Dr. Gottlieb opined that Mother suffers from delusional disorder, that his review of Mother's November 2013 involuntary commitment records are "entirely consistent" with delusional disorder, that Mother suffers from an unspecified personality disorder, and

that "at the very least," Mother needs individual therapy "over a **_long-term_**

basis" and "needs to be followed by a psychiatrist **_over time_**." (Psychiatric

report of Dr. Gottlieb, 4/3/15 at 11-12 (emphasis added).)

Moreover, when the trial court conducted its best-interests-of-the-child

analysis pursuant to Section 5328(a) of the Act,[3] the trial court noted its

---

[3] In custody disputes, trial courts are statutorily required to consider the 16 factors set forth in the best-interests test when determining the child's best interests. **_See_** 23 Pa.C.S.A. § 5328(a) ("[i]n ordering any form of custody, the court shall determine the best interests of the child by considering all relevant factors . . . ."); **_see also A.V. v. S.T._**, 87 A.3d 818, 821 (Pa.Super. 2014) (reiterating that "Section 5328 provides an enumerated list of sixteen factors a trial court must consider in determining the best interests of the child or children when awarding any form of custody.").

Section 5328 of the Child Custody Act sets forth the 16-factor best-interest test, as follows:

> **§ 5328. Factors to consider when awarding custody**
>
> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a

continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

"lingering concerns that Mother continues to suffer from some degree of undue fixation upon Father" when analyzing Factor 15 which addresses the mental and physical conditions of the parties. (Trial court opinion, 5/3/18 at

---

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

42 Pa.C.S.A. § 5328(a).

15, ¶ 15.)  The trial court further stated that there is "no doubt" that Mother's court-ordered psychiatric treatment "was beneficial for Mother."  (*Id.* at 16-17.)  The trial court found it unfortunate that financial issues caused Mother to discontinue treatment.  (*Id.* at 17.)  The trial court then concluded that although it believes "that Mother may benefit from continued counseling, considering the limited nature of any credible recent testimony regarding such matters, the court affirmatively concludes that Mother is not so inflicted or impaired so as to preclude her ability to effectively parent these minor Children." (*Id.*)

The trial court's analysis misses the mark.  The question is not whether the trial court believes Mother is "not so inflicted or impaired so as to preclude her ability to effectively parent."  The question is whether a psychiatric evaluation of Mother would be in the best interests of the Children.  Moreover, it is important to note that the trial court arrived at its conclusion that "Mother is not so inflicted or impaired so as to preclude her ability to effectively parent these minor Children" after considering "the limited nature of any credible *recent* testimony regarding" her mental health.  (*Id.* (emphasis added).) Certainly, then, in the best interests of the Children, a current psychiatric evaluation would aid the trial court in properly evaluating Factor 15 (Mother's mental condition) and Factor 16 (any other relevant fact) to ultimately determine custody of the Children pursuant to the best-interests test.  We further note that although this court is aware that the primary concern in

custody matters lies not with the past but with the present and future, ***Brooks v. Brooks***, 466 A.2d 152, 156 (1983), in light of the record before us, and in the best interests of the Children, Mother's mental health must be reevaluated as a relevant consideration in the assessment of her future behavior and its effect on the Children's welfare.

We, therefore, find that it is in the best interests of the Children that Mother undergo a court-ordered psychiatric evaluation.[4]

Father next contends that the trial court erred when it denied his request for the appointment of a guardian ***ad litem*** for the Children, as well as his request for co-parent counseling.

Pa.R.Civ.P. 1915.11-2 permits the trial court to appoint a guardian ***ad litem*** to represent the best interests of the child in a custody action. Pa.R.Civ.P. 1915.11-2(a). The appointment of a guardian lies within the sound discretion of the trial court. ***Estate of Haertsch***, 649 A.2d 719, 720 (Pa.Super. 1994). "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***In re Duran***, 769 A.2d 497, 506 (Pa.Super. 2001), quoting ***Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1123 (Pa. 2000).

---

[4] We note that Rule 1915.8 permits the trial court to assess the cost of the examination to any or all of the parties. Pa.R.Civ.P. 1915.8(a)(1); ***see also Miller v. Steinbach***, 194, 681 A.2d 775, 776 (Pa.Super. 1996).

In its Rule 1925(a) opinion, the trial court cites to an unpublished memorandum of this court for the proposition that the appointment of a guardian *ad litem* is appropriate in high-conflict custody cases. (Trial court opinion, 6/29/18 at 13.) We note that the Internal Operating Procedures of the Pennsylvania Superior Court prohibit a court, as well as a party, from relying on or citing to an unpublished memorandum decision, except in certain limited circumstances which are not present here. 210 Pa.Code § 65.37(A). Nevertheless, the court based its analysis of this issue on that unpublished memorandum decision to reach its conclusion that denial of Father's request for the appointment of a guardian *ad litem* for the Children was proper because Father failed to provide the trial court "with a sufficient factual basis . . . that there was any current extreme conflict between the parties during the seven months following [its] Order dated December 16, 2016 nor was [there] any inability to cooperate between the parties presented sufficient to warrant" such an appointment. (Trial court opinion, 6/29/18 at 13.)

Once again, the trial court's analysis misses the mark. The question is not whether there is "any current extreme conflict" between Mother and Father; the question is whether, under the circumstances presented in this case, it is in the best interests of the Children to appoint a guardian *ad litem* to represent their best interests. In light of the record before us, we conclude that the appointment of a guardian *ad litem* is in the best interests of the Children.

Within this issue, Father also contends that the trial court erred when it denied his request to enter an order requiring Mother and Father to attend co-parenting classes.

The record reflects that Father filed a petition for contempt, modification, and special relief on July 7, 2017. In that petition, Father averred, among other things, that he had "requested, through counsel, that the parties attend co-parenting counseling" and that "Mother will not participate in such counseling with Father." (Father's petition for contempt, modification, and special relief, 7/7/17 at 12, ¶ 12.) Father then requested that the trial court enter an order that the parties participate in co-parenting counseling. (*Id.* at 12, prayer for relief.) The trial court issued a rule upon Mother to show cause, within 20 days, as to why Father's requested relief should not be granted. (Order of court, 7/10/17.) Mother failed to file a response. (*See* order of court, 8/10/17.) Following argument on Father's petition,[5] the trial court denied Father's request that it order the parties to participate in co-parenting counseling. (*Id.*)

In its Rule 1925(a) opinion on this issue, the trial court concluded that "based upon the totality of the evidence presented [at the hearing on this issue], the court affirmatively concluded that additional co-parenting

---

[5] The July 7, 2017 argument was not stenographically recorded. (*See* trial court opinion, 6/29/18 at 14.)

counseling was unlikely to be beneficial to these parties, as disheartening as such conclusion may be." (Trial court opinion, 6/29/18 at 14-15.)

Once again, the trial court's analysis misses the mark. The issue is not whether the trial court believes that "additional co-parenting counseling [is] unlikely to be beneficial to" Mother and Father; the issue is whether an order requiring Mother and Father to participate in co-parenting counseling would be in the best interests of the Children. The record belies the conclusion that an order requiring the parties to participate in co-parenting classes would not be in the best interests of the Children.

At this point, it is important to note that this case commenced approximately five years ago when Wife filed a complaint in divorce on December 20, 2013. In its May 3, 2018 opinion, the trial court set forth its best-interests analysis pursuant to Section 5328(a) of the Act. Factors 2, 3, 4, 5, 6, 7, 10, 11, 12, and 14 weighed in favor of neither party. With respect to Factor 2, the trial court stated that it "specifically rejects Father's contentions that Mother's residence is not safe for the Children due to Mother's current mental state," but acknowledges that "there may exist some lingering concern regarding certain actions taken by Mother and the potential impact of such actions on the emotional state of the Children. (Trial court opinion, 6/29/18 at 9, ¶ 2.)

With respect to Factor 1, the trial court did not determine which parent is more likely to encourage and permit frequent and continuing contact

between the Children and the other parent. Instead, the trial court encouraged the parties to permit the Children to contact the other party, to recognize the importance of frequent and continuing contact between the Children and the other parent, to strive to improve their efforts to encourage the Children to maintain such contact, and to improve their own ability to communicate. (*Id.* at 8-9.)

With respect to Factor 8 (attempts of one parent to turn the Children against the other parent), the trial court determined that Mother has previously made negative comments about Father to the Children, but that Mother did not have the "express intent of attempting to turn the Children against Father." (*Id.* at 12, ¶ 8.) The trial court then instructed the parties of their "need to understand the importance of not making derogatory comments about the other party in front of the Children, as well as the importance of not discussing custody matters with the Children." (*Id.*) The trial court then stated that the parties "should focus on promoting a loving relationship between the Children and the other parent." (*Id.*) The trial court also encouraged "the parties not to allow any lingering hostilities toward each other from this litigation to affect the Children." (*Id.*)

With respect to Factor 9, the trial court found that both Father and Mother are capable of maintaining a loving, stable, consistent, and nurturing relationship with the Children, except to the extent that Mother may continue to make negative comments about Father to the Children. (*Id.* at 12, ¶ 9.)

The trial court then "encouraged the parties to consider the need for counseling so as to create a proper and safe environment for the Children" should further concerns arise. (*Id.* at 13.)

With respect to Factor 13, the trial court concluded that there is "an unfortunate amount of conflict between" Mother and Father. (*Id.* at 14, ¶ 13.) The trial court noted that it is "apparent" that Father and Mother "have established a less than ideal mechanism to facilitate cooperation for the benefit of the Children" and recognized that Father and Mother "have clearly chosen to minimize personal conflict with one another so as to avoid conflict." (*Id.*) The trial court then stated it "strongly encourages the parties to engage in open dialogue with each other pertaining to issues involving the Children and encourages the parties to improve upon their ability to communicate." (*Id.*)

With respect to Factor 15 (mental and physical condition of a party or member of party's household), the trial court stated that it does not have any current concern with the mental or physical condition of Father or anyone in his household, but "has lingering concerns that Mother continues to suffer from some degree of undue fixation upon Father and Father's purported actions against her in the past." (*Id.* at 15, ¶ 15.)

With respect to Factor 16 (any other relevant factor), the trial court summarized Mother's mental health history and then encouraged her to consider resuming counseling. (*Id.* at 15-17, ¶ 16.) The trial court then

expressed its "honest and sincere hope . . . that the parties channel their efforts toward parenting the Children in a manner that is uplifting and positive." (*Id.* at 17.) The court then expressed its concern "that these parties may never obtain the ability to effectively co-parent the Children." (*Id.*)

The trial court's recognition that the parties harbor lingering hostilities toward each other that may affect the Children; its suggestion that the parties consider counseling to create a proper and safe environment for the Children; its recognition that the parties have established a less than ideal mechanism to facilitate cooperation of each other to benefit the Children; its suggestion that the parties engage in open dialogue with respect to issues involving the Children; its suggestion that the parties improve their communication; its hope that the parties work toward parenting the Children in an uplifting and positive manner; and its recognition that the parties may never be able to effectively co-parent the Children demonstrate that it is in the Children's best interests that the parties be required to participate in co-parent counseling.

Father next contends that the trial court erred when it failed to hold Mother in contempt "when she so obviously violated the court's prior orders." (Father's brief at 24.)

In considering an appeal from a contempt order, we place great reliance upon the trial court's discretion. ***Bold v. Bold***, 939 A.2d 892, 894-895 (Pa.Super. 2007) (citation omitted). As such, appellate review of a contempt

finding is limited to determining whether the trial court abused its discretion.

*Id.* (citation omitted).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Id.* (citations omitted). Therefore, we will reverse an order granting or denying a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner that lacked reason. *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa.Super. 2012) (citation omitted).

Generally, in civil contempt proceedings, the complainant bears the burden of proving that the defendant failed to comply with a court order. *MacDougall*, 49 A.3d at 892 (citation omitted). To sustain a finding of civil contempt, the complainant must prove by a preponderance of the evidence that (1) the contemnor had notice of the order that she alleges the contemnor disobeyed; (2) the act constituting the alleged violation was volitional; and (3) the contemnor acted with wrongful intent. *Id.* (citation omitted). Moreover, we defer to the trial court's credibility determinations with respect to witnesses who have appeared before it because that court has had the opportunity to observe their demeanor. *Habjan v. Habjan*, 73 A.3d 630, 644 (Pa.Super. 2013).

Here, the record reflects that over the course of the litigation, Father filed four contempt petitions against Mother. Father summarizes his allegations as follows:

> [First,] Mother failed and refused to continue treatment with a board certified psychiatrist in direct violation of the Court's December 15, 2016 Order; [second,] Mother failed and refused to allow Father to have telephone contact with the [C]hildren during her periods of custody in violation of the Court's December 15, 2015 Order and during her vacation period in violation of the Court's August 8, 2017 Order; [finally,] Mother made disparaging and derogatory remarks about Father to the [C]hildren in violation of the Court's December 15, 2016 Order.

Father's brief at 25.

The record further reflects that the trial court adjudicated Mother "in contempt of [its order] dated December 15, 2016, inasmuch as she has repeatedly, willfully, and intentionally prevented Father from maintaining reasonable telephone contact with the minor Children, in violation of [Section] VI(c) of said [o]rder." (Trial court order, 5/3/18 at 28, ¶ VII.) The trial court then imposed sanctions in the amount of $300. (*Id.*)

With respect to Father's remaining averments of contempt, the trial court found that Father failed to prove that Mother made derogatory remarks to the Children about Father after entry of its December 15, 2016 order, and even if Mother continued to make inappropriate comments about Father to the Children after entry of that order, any act constituting an alleged violation of the order was not volitional. (*See* trial court opinion, 5/3/18 at 18-24.)

With respect to Mother's failure to continue treatment with a board-certified psychiatrist, the trial court found credible Mother's testimony that she discontinued treatment for financial reasons, and therefore, her failure to continue treatment was not volitional. (*Id.* at 24.) We have carefully reviewed the record and conclude that it supports the trial court's factual findings. We, therefore, decline Father's invitation to revisit those factual findings on appeal and affirm that part of the trial court's order that denied Father's petitions for contempt.

Father finally contends that the trial court erred when it relied on "misstatements of evidence and testimony to support its conclusions as to the best interests of the Children." (Father's brief at 30 (full capitalization omitted).) In this issue, Father, for the most part, reiterates the arguments he advanced regarding the trial court's determinations with respect to Mother's mental health. Our disposition of Father's first issue on appeal is dispositive here. Finally, we note that Father expresses his discontent that the trial court found, as a matter of fact, that Father "previously suffer[ed] from depression" because he previously took anti-depressants. (Father's brief at 34; trial court opinion, 5/3/18 at 15, ¶ 15.) Once again, we decline Father's invitation to revisit factual findings on appeal.

We reverse the custody order and remand directing the trial court to (1) enter an order (i) directing that Mother undergo a psychiatric exam by a board-certified psychiatrist; (ii) appointing a guardian *ad litem* for the

Children; and (iii) requiring Father and Mother to attend co-parenting classes. On remand, we also direct the trial court to reopen the custody hearing to receive the testimony of the board-certified psychiatrist who will evaluate Mother and the guardian ***ad litem*** who will represent the Children's best interests. Following receipt of that testimony, the trial court is directed to conduct a best-interests-of-the-child analysis pursuant to Section 5328(a) of the Act and enter a new custody order. Prior to the entry of the new custody order, Mother's periods of partial physical custody must be supervised.

Mother's psychiatric evaluation, the guardian ***ad litem***'s report, and the reopened custody hearing should be accomplished as quickly as is practicable to satisfy the interests of finality and stability in custody arrangements for the Children. We order that the current custody arrangements be modified only to the extent that Mother's periods of partial physical custody be supervised pending the outcome of the reopened custody hearing. We direct that the reopened custody hearing take place immediately following Mother's psychiatric evaluation and the guardian ***ad litem***'s review of all relevant records as set forth in Pa.R.Civ.P. 1915.21, as well as the guardian ***ad litem***'s interviews with the Children, the family, and medical and/or social service providers connected with the case.

Order reversed in part and affirmed in part. Case remanded. Jurisdiction relinquished.


Ott, J. joins this Memorandum.

McLaughlin, J. concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2019