J-A25019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| T.K., | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| M.D.C. | : | No. 3499 EDA 2017 | |

Appeal from the Order Entered October 5, 2017
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  No. 2015-003199

BEFORE:  PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, J.:                    **FILED MAY 24, 2019**

T.K. ("Father") appeals from the order finding him in indirect civil contempt of a custody order in this highly contentious custody and visitation dispute.  We conclude that the underlying order M.D.C. ("Mother") alleged Father violated was not "definite, clear, and specific" as to the conduct that the learned trial court subsequently held prohibited.  To the contrary, the trial court, in virtually identical circumstances, accepted and endorsed the very course of conduct Father had adopted.  Accordingly, we are constrained to reverse the order of contempt.

This is the third of three inter-related companion appeals sharing a long, complex, and somewhat convoluted history.[1]  However, the basic facts relevant to the issues in this appeal are not in substantial dispute, even though the parties disagree about the inferences to be drawn, and a host of other issues.

Briefly summarized, Father is a citizen of the United States, and a resident of Delaware County, Pennsylvania.  Mother is a native of Argentina.[2]  Mother's parents ("Grandparents") are also from Argentina.  At times, Mother and Father lived in Argentina.  Currently, both live in Pennsylvania.

The trial court granted Father primary physical custody and legal custody of both Children, in an emergency order. Mother has joint legal custody with regard to medical care and decisions, not at issue in this appeal. Mother also received partial physical custody: one hour of supervised visitation two times a week.

Mother was convicted on charges of assault and harassment of Father arising from an incident while the family was on vacation in Colorado.  Father

---

[1] Defendant/Appellee, M.D.C. (Mother), her parents, and Father have been involved in some form or other of custody and visitation dispute over Mother and Father's two minor children, M.A.K. (born in 2009) and T.M.K. (born in 2010) ("Children"), since at least 2011.

[2] While Father mentions only Mother's Argentinian citizenship, he does not dispute her claim of dual citizenship.  Mother's citizenship is not at issue in this appeal.

has Protection from Abuse orders against Mother in Pennsylvania, Colorado, and allegedly, Argentina as well.

Additionally, Mother was acquitted on charges of child abuse arising from the same incident. While the child abuse charges were pending, the Colorado court imposed significant limitations on Mother's access to her Children. Those limitations resulted in the restrictions on visitation imposed in the Emergency Custody Order.

While the record confirms Mother's strong desire to have the limitations lifted, it does not appear that they were, even after the acquittal on the child abuse charges. Father also alleged kidnapping or attempted kidnapping of the Children by Mother and the Grandparents for return to Argentina. Mother and Grandparents dispute these allegations.

On June 23, 2016, Mother filed a *pro se* petition for contempt, claiming that Father intentionally disobeyed the Emergency Custody Order. Specifically, Mother alleged that Father took the Children on vacation to Disney World in Florida from June 15, 2016 to June 25, 2016, without her permission. This extended vacation deprived Mother of the visitation granted to her under the emergency custody order.

At the hearing on Mother's petition, held in October of 2017, Mother conceded that in May of 2016, Father's counsel e-mailed her, stating that Father had scheduled a vacation with the children for the next month and suggesting make-up visitation dates. In her reply, Mother endorsed the

concept of vacation for the Children in principle, but objected to the proposed trip, citing the "precarious situation."[3]

Mother was also concerned that the vacation could interfere with the timing of hearings for the final custody order. Father's counsel indicated that the vacation "should not interfere with any [c]ourt dates and we are offering makeup time for the missed visits." Mother reiterated her opposition to the vacation under the circumstances, and asked Father's counsel if counsel had better knowledge of the court's schedule. Father's counsel responded that she did not.

Mother showed up at the church as scheduled for her visitation. As the Children were with Father in Florida, however, no visitation occurred. Mother did not agree to any make-up dates before the fact. However, after the vacation she accepted and attended two make-up visitation sessions in July.

At the close of hearing, the trial court found Father in contempt, and awarded one thousand dollars in attorney fees for Mother's counsel. This timely appeal followed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises three questions for our review on appeal:

---

[3] In full, quoting from her e-mail to Father's counsel, Mother said, "As you know from my previous declarations, I will never oppose to the children enjoyment [sic] but I think that this is at least unwise to plan for vacations in the present situation that we are in in [sic] the middle of such a precarious situation." N.T. Hearing, 10/3/17, at 101.

1. Whether the trial court erred and abused its discretion in holding Father in contempt of the April 24, 2015 Custody Order in circumstances where the Order was not "definite, clear and specific," and there was no evidence to establish that Father knowingly or intentionally violated the Order?

2. Whether the trial court erred and abused its discretion in holding Father in contempt of the April 24, 2015 Custody Order in circumstances where Father's attorney, Phyllis Bookspan, not Father, was the actor, and Father's attorney acted in 2016 in a manner that complied with the Custody Order as interpreted by the trial court previously on December 29, 2015?

3. Whether the trial court erred and abused its discretion in holding Father in contempt of the April 24, 2015 Custody Order where Mother was in fact provided make-up custodial time missed during Father's vacation with the children, which was consistent with the trial court's December 29, 2015 interpretation of the Custody Order?

Appellant's Brief, at 4.

Our standard of review is well-settled.

As an initial point, we note that appellate review of a finding of contempt is limited to deciding whether the trial court abused its discretion.

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt.

***Lachat v. Hinchcliffe***, 769 A.2d 481, 487–88 (Pa. Super. 2001) (formatting and citations omitted).

We also remain mindful of these applicable legal principles:

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Kopp v. Turley*, 518 A.2d 588, 590 (Pa. Super. 1986) (quotation marks and citations omitted).

"Accordingly, we are confined to a determination of whether the facts support the trial court's decision. Also in civil contempt proceedings the complaining party has the burden of proving by a preponderance of the evidence that a party violated a court order." *Chrysczanavicz v. Chrysczanavicz*, 796 A.2d 366, 368–69 (Pa. Super. 2002) (citation, internal quotation marks, and brackets omitted).

The right to punish for contempt is adherent in all courts. It is a power essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. In considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge. **The authority of a judge, however, to hold one in contempt, depriving as it does a person of liberty, is an authority that should be used rarely, and with extreme caution.**

*Marian Shop, Inc. v. Baird*, 670 A.2d 671, 672–73 (Pa. Super. 1996) (citations and internal quotation marks omitted; emphasis added).

We need only address Father's first issue on appeal, as it is dispositive. Father contends the court abused its discretion in finding that the emergency custody order was definite, clear, and specific in prohibiting scheduling of vacations that interfered with Mother's visitation without Mother's prior consent.

- 6 -

In order to support a finding of contempt, the order or decree which the contemnor has been held to have violated, must be *definite, clear, and specific*—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, **any ambiguities or omissions in the order must be construed in favor of the defendant**. . . . Additionally, the mere showing of noncompliance of a court order or misconduct, is never sufficient, alone, to prove contempt.

*Id.* at 673 (citations omitted) (first emphasis in original; second emphasis added).

To be punished for [civil] contempt, a party *must* have violated a court order. … Nevertheless, the mere showing of noncompliance of a court order or misconduct, is never sufficient, alone, to prove contempt. [T]he order or decree which the contemnor has been held to have violated, must be *definite, clear, and specific* - leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Moreover, the contemnor must have had notice of the order he disobeyed, the act constituting her violation must be volitional; and she must have acted with wrongful intent. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant.

*Bold v. Bold*, 939 A.2d 892, 895 (Pa. Super. 2007) (emphasis and brackets in original; quotation marks and citations omitted).

For clarity and completeness, we reproduce the emergency custody order:

AND NOW, to wit, this 24th day of April, 2015, after consideration of Plaintiff's Emergency Petition in Custody and Emergency Petition for Return of Passports filed on April 9, 2015, Defendant's Answer and Counterclaim filed April 13, 2015 and Plaintiff's Amendment to Plaintiff's Emergency Petition in Custody and Emergency Petition for Return of Passports and Plaintiff's Answer to Defendant's Counterclaim filed on April 15, 2015, it is hereby ORDERED and DECREED as follows:

1. Primary physical custody of [the Children], is hereby awarded to [Father] until further Order of Court.

2. Joint legal custody with respect to medical care and decisions is awarded to [Father and Mother.]

3. Sole legal custody for all else awarded to [Father] until further Order of this Court.

4. Supervised partial physical custody of the [the Children] is awarded to [Mother,] as follows; two sessions a week for one hour each, supervised by security personnel who may carry concealed arms and observed by an independent Spanish/English speaker interpreter; the said sessions to be in a classroom at St. Mary Magdalene Church in Media, Pennsylvania Mondays at 5:30 PM to 6:30 PM and Thursdays at 4:15 PM to 5:15 PM; costs to be borne by Plaintiff/Father; no other persons are to be present at the sessions; and [Grandparents] are not to be on the grounds of the church during these sessions.

5. The [c]ourt recognizes that [Mother] is subject to certain restrictions concerning minor children pursuant to criminal charges pending in the Eagle County Court of Colorado and the Mandatory Protection Order in Eagle County, Colorado. Therefore, the aforesaid supervised visitation is suspended until such time as [Mother's] restrictions as they pertain to contact with the children are modified by the Eagle County Court of Colorado.

6. All Passports of the children, both Argentine and United States, to be held in protective custody by Bernard Berman, Esquire, 20 West Third Street, Media, Pennsylvania, not to be released except upon written agreement of both parties, and/or until further Order of this Court.

7. Both parties and children shall submit to a full custody evaluation, which shall include psychological examinations, and parent/child bonding evaluations. Agreement with respect to the evaluator to be determined no later than April 27, 2015 and it is to be entered as an Order of Court.

8. Counterclaims of [Mother] are held in abeyance without prejudice.

Emergency Custody Order, 4/24/15, at 1-2.

At a December 2015 status hearing in the divorce proceeding between the parties, Mother, *pro se*, raised the visitation issue. Mother noted that on the next day, Father was taking the Children on vacation to Florida. She complained that she was being deprived of a visitation date, and argued that Father should plan vacations so she would not miss any visitation.

In an extended colloquy, the trial court explained:

> THE COURT: Dad does have legal custody at this time to make those decisions. I'm not saying he can just cancel your visitation whenever, **but he does have the right to take the children on a vacation.** However, then you should have makeup sessions next week or the following week so that you can see the children.

N.T. Hearing, 12/29/15, at 48 (emphasis added).

Nevertheless, at the October 2017 hearing on the petition for contempt, the same judge stated:

> THE COURT: You simply just don't take your children and go on vacation and say oh well, because when you do, I get a Contempt Petition. Now, **normally, I would agree that this is a little blip because Mom had makeup days and I don't think mom was real big on getting her answers to the dates.** I don't see a response that said June 30th and whatever it is, July 7th, don't work. This is a little bit of a unique case and mom sees these children two hours a week and that was done because the parties wanted an evaluation and I said on that record in the transcript that I didn't want an evaluator coming in here and telling me there was no bond with mom because she hadn't seen them for six months. As it is, this is a difficult area.

N.T. Hearing, 10/3/17, at 162 (emphasis added).

In its opinion, the trial court denies that Father had the "legal right" to take the Children on vacation. Trial Court Opinion, 1/11/18, at p. 8 (unpaginated). However, this conclusion is virtually the opposite of the

- 9 -

position the trial court espoused at the divorce status hearing on December 29, 2015.

We agree with the trial court that this is a difficult case, and share its concern over the effects of the emergency custody order's application over an extended period. However, it is readily apparent that neither the trial court nor the emergency order put Father on notice that he was at risk of being held in contempt if he scheduled vacations that interfered with Mother's visitation. Under these circumstances, we cannot conclude that the order was definite, clear, and specific in prohibiting Father from unilaterally planning vacations with the Children that interfered with Mother's visitation.

Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of Father. *See Bold*, 939 A.2d at 895. Here, the omission of any specific requirements to pre-clear vacation dates in the order must be strictly construed in Father's favor.

Construing this doubt or uncertainty in favor of Father, as we must under our standard of review, we are constrained to conclude that the trial court misapplied the law and abused its discretion in holding Father in

contempt. Because our conclusion resolves Father's claim, we need not address his second or third questions, and we expressly decline to do so.[4]

Order reversed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/24/2019*

---

[4] The trial court opinion treats the claim as civil contempt. Father has not challenged the trial court's classification on appeal. Further, we conclude the distinction would not alter our result in any event.