J-A22009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| M. E. P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M. C. D. | : | No. 1234 EDA 2025 |

Appeal from the Order Entered April 30, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2024-18555

BEFORE: LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.: **FILED DECEMBER 23, 2025**

Appellant M. E. P. appeals from the final custody order, entered in the Court of Common Pleas of Montgomery County, requiring she and Appellee M. C. D. share legal and physical custody of their minor child, P.D., (Child) (born November 2020). After review, we affirm.

This custody matter commenced in July of 2024 following the parties' separation.[1] On August 1, 2024, the parties entered into a temporary custody order and, following a custody conciliation on September 9, 2024, the court entered an interim order on November 15, 2024. Appellee filed a praecipe to relist the matter for a custody trial, but no trial was conducted; instead, the parties entered into an agreed interim custody order and the matter was

---

[*] Former Justice specially assigned to the Superior Court.

[1] The parties are a same-sex couple and were never married. Appellant is the biological mother of Child.

scheduled for a court conference on January 24, 2025. Prior to the conference, on January 7, 2025, Appellant filed a petition for contempt of the interim custody order stemming from a violation of a Christmas Day custodial exchange location. Appellee filed a response to that petition and the matter was considered at the full custody trial on April 4, 2025. Both parties and the parties' co-parenting counselor, John Gentry, PsyD., testified at trial.

On April 8, 2025, the court entered an order granting the parties joint legal custody and equally shared physical custody. The court also denied Appellant's contempt petition.

On April 14, 2025, Appellant filed a motion for reconsideration. The court filed its order changing the co-parenting counselor and made other minor changes to the final order, leaving unchanged the allocation of physical and legal custody between the parties. Appellant filed this timely appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises seven issues[2] on appeal:

1. Did the trial court err and/or abuse its discretion in denying Appellant's petition for civil contempt for disobedience of a custody order, filed January 7, 2025, when it was not disputed that Appellee willfully violated the custody order's provisions related to child custody exchange locations on Christmas Day, 2024?

2. Was the trial court's decision to grant the parties shared ("50/50") physical custody of the child supported by the evidence presented, including, but not limited to, the evidence

_____

[2] In her Rule 1925(b) statement of errors complained of on appeal, Appellant raised eight issues. She has carried forward seven of those claims here. *See* Rule 1925(b) Statement, 5/5/25.

regarding the child custody factors enumerated in 23 Pa.C.S.A. § 5328(a)?

3. Did the trial court err and/or abuse its discretion in failing to appropriately weigh[] allegations of abusive conduct on the part of Appellee, in accordance with 23 Pa.C.S.A. §[§] 5328(a)(2) and (a)(13) and as amended by Kayden's Law (Act 5 of 2023)?

4. Did the trial court err and/or abuse its discretion in denying Appellant's motion for a private custody evaluation, dated December 6, 2024, when no prior custody evaluation or mental health evaluation had ever been completed in the case, when Appellant was willing to pay for the entire cost of said evaluation, and when the child had not been interviewed at any point during the course of the proceeding (either by the court or by a professional)?

5. Did the trial court, in the course of the custody hearing below, commit a prejudicial error by permitting [Dr. Gentry] to testify telephonically, over the objection of counsel for Appellant, when counsel for Appellant was not given an opportunity to respond to the telephonic appearance request prior to the court granting said request on behalf of Appellee in advance of the hearing?

6. Did the trial court, in the course of the custody hearing below, commit a prejudicial error by admitting certain evidence offered by Appellee, including, but not limited to, the testimony of [Dr. Gentry], who provided a psychological assessment regarding the child's mental state despite never having interviewed or observed the child, in violation of the APA Ethics Code, Standard 9.01(b)?

7. Did the trial court, in the course of the custody hearing below, commit a prejudicial error by admitting certain evidence offered by Appellee, including, but not limited to, voluminous "Our Family Wizard" messages that counsel for Appellant did not have time to review, and that had not been properly authenticated by Appellee prior to admission?

Appellant's Brief, at 13-14.

In her first issue, Appellant argues the court abused its discretion in denying her petition for civil contempt. In her petition, Appellant alleged Appellee violated the interim order requiring custody exchanges not occurring at school, camp, or daycare to occur at the custodial parent's residence. *See* Petition for Civil Contempt, 1/7/25, at 5-6. On December 24, 2024, Appellee informed Appellant that she and Child would be spending the holiday at Appellee's mother's home, and Appellant could pick child up there for the Christmas Day custody exchange. *Id.* Appellee admitted to this, and alleged that she offered to meet Appellant at a central location for the exchange, but Appellant refused that offer. *See* Answer to Petition for Civil Contempt, 1/23/25, at 4.[3]

Appellant resides in Lansdale, and Appellee resides in Chestnut Hill. Appellee's mother's home, where Appellee and Child spend a significant amount of time, is in Southampton, approximately a 20-minute longer drive for Appellant than if she were to drive to Appellee's home. At trial, Appellee stated that she "was seeking the best situation for [Child] given the holiday circumstances." N.T. Custody Trial, 4/4/25, at 4-5. She further stated: "[Appellee] knows of [Appellant's] fear of driving, particularly into Philadelphia[,] and so she believed [Appellant] would be relieved to pick

_____

[3] This is contrary to Appellant's testimony at trial, where Appellant stated that she offered to meet Appellee at a halfway point, and *Appellee* did not accept that offer. *See* N.T. Custody Trial, 4/4/25 at 75-77, 174. It appears that the trial court resolved this discrepancy in favor of Appellee. *Id.* at 204-05.

[Child] up in the suburbs on Christmas Day." *Id.* Appellant ultimately picked Child up at Appellee's mother's home in Southampton.

In considering an appeal from a contempt order, we place great reliance upon the trial court's discretion. *Bold v. Bold*, 939 A.2d 892, 894–95 (Pa. Super. 2007) (citation omitted). As such, appellate review of a contempt finding is limited to determining whether the trial court abused its discretion. *Id.* at 895 (citation omitted). Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure. *Id.* (citations omitted). Therefore, we will reverse an order granting or denying a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner that lacked reason. *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012) (citation omitted). Moreover, we defer to the trial court's credibility determinations with respect to witnesses who have appeared before it because that court has had the opportunity to observe their demeanor. *Habjan v. Habjan*, 73 A.3d 630, 644 (Pa. Super. 2013). This framework underscores our narrow standard of review narrow

Here, the court did not condone Appellee's refusal to meet at the exchange site specified in the interim order. However, the court determined

that, under the circumstances, sanctions were unwarranted. Specifically, the court stated that

> the circumstances personally witnessed in court by the undersigned, especially the demeanors of the parties, supported the conclusion that imposition of a contempt sanction would be counterproductive to the interests of the party who filed the contempt petition **and [C]hild**. . . . [T]he personal observation of [A]ppellant by the undersigned in court amply supported the conclusion that [A]ppellant filed the contempt petition to exact revenge and disproportionate retribution on [A]ppellee.

Trial Court Opinion, 5/30/25, at 13-14 (emphasis added). In light of our narrow standard of review, along with our deference to the court's credibility determinations and its observations of each party's demeanor, we find no error or abuse of discretion. **MacDougall**, **supra.** Accordingly, this claim is meritless.

In her next two issues, Appellant argues the trial court's order of shared physical custody is against the weight of the evidence "under 23 Pa.C.S.A. § 5238(a), and as amended by Kayden's Law." Appellant's Brief, at 24.[4, 5]

_____

[4] Although Appellant raises these issues separately in her Statement of Questions Involved, **see** Appellant's Brief, at 13-14, she has, contrary to our Court's appellate briefing rules, combined the argument in the Argument section of her brief. **Id.** at 24-58. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]").

[5] Subsection 5328(a), along with other domestic relations provisions, was amended pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as "Kayden's Law"), effective August 13, 2024. Kayden's Law expands the factors to be considered in the custody court's best interest analysis and now requires the court to give "substantial weighted consideration" to, inter alia, the "safety of
*(Footnote Continued Next Page)*

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

In any custody case decided under the Child Custody Act (Act), 23 Pa.C.S.A. §§ 5321 *et seq.*, the paramount concern is the best interest of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. *See also C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018). In ordering any form of custody, the court shall determine the best interest of the child by considering the factors set forth in subsection 5328(a).

Appellant argues the court's 50/50 physical custody award is not supported by the evidence "under numerous statutory factors outlined in 23 Pa.C.S.A. § 5328(a), including, but not limited to, those involving safety, abuse, stability, cooperation, and caregiving history." Appellant's Brief, at 17. In particular, Appellant claims the trial court's "failure to address Factor #1

---

the child," which is defined in Kayden's Law as including "the physical, emotional[,] and psychological well-being of the child," and any "[v]iolent or assaultive behavior committed by a party." Act of April 15, 2024, P.L. 24, No. 8, §§ 2-3 (as amended 23 Pa.C.S.A. §§ 5322(a), 5328(a)). These changes do not undermine the court's custody determination based on other applicable section 5328(a) factors.

regarding child safety, especially in light of Kayden's Law, was a critical legal error." Appellant's Brief, at 17. We disagree.

The court specifically stated on the record that, with respect to Appellant's claim regarding Appellee's use of medical marijuana, there was no evidentiary support for the claim that Child was unsafe with Appellee. **See** N.T. Custody Trial, **supra** at 207, 211 ("To me there is no evidence to support that that has translated into risk or harm to the child. . . . I think the fact that Appellee has reduced her marijuana is important and shows not only compliance with the court order, but [is] significant in terms of how it may impact [C]hild."). **See also id.** at 120 (Appellee testifying she discontinued using medical marijuana in January 2025, and did not renew her medical marijuana card); **id.** at 58 (Appellant acknowledging Appellee's "distancing" from medical marijuana use). The trial court detailed its reasons for the order and its analysis of the statutory factors on the record. **See** N.T. Custody Trial, **supra** at 214-19. With respect to safety concerns, the court clearly explained:

> Do I think there was ever any abuse as to [Child], no. And I think both of them said that, that they didn't believe there was. Did [Appellant] have some concerns about the T.V. watching and the sleeping habits and patterns, yes. Was she worried about some of the behavior at the custody exchanges, yes. There was a denial about some of that, and there was a little bit of admission to some of it. So I don't think there's so much clarity on that issue that I could say, yes, that occurred. So I'm not sure it bubbled up to the level worthy of such concern. It certainly -- it merits my commenting any further, but it certainly didn't rise to the level of abuse at this point. Are there concerns that need to be addressed about talking around [Child] and what's been talked about and what shows are being watched and bedtime and getting her to school, yes. But abuse. No.

*Id.* at 214-15.

Further, the trial court thoroughly analyzed each statutory factor on the record. *See* N.T. Custody Trial, *supra* at 214-19. *See also* 23 Pa.C.S.A. § 5323(d) ("The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order."). Appellant essentially asks this Court to reweigh the evidence, which we cannot do. The custody court is permitted to place an appropriate weight on various custody factors so long as its conclusions are supported by the record. After our comprehensive review, we find the court's conclusions fully supported by the evidence of record. We find no abuse of discretion. *See A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (on issues of credibility and weight of evidence, we defer to findings of trial court that has had opportunity to observe proceedings and demeanor of witnesses).

Next, Appellant argues the trial court erred and/or abused its discretion in denying her motion for a private custody evaluation. This claim is meritless. Pennsylvania Rule of Civil Procedure 1915.8 provides, in relevant part:

(a) The court **may** order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts. The order, which shall be substantially in the form set forth in Rule 1915.18, may be made upon the court's own motion, upon the motion of a party with reasonable notice to the person to be examined, or by agreement of the parties.

Pa.R.C.P. 1915.8(a) (emphasis added). Here, Appellant sought a private custody evaluation in December 2024. After the trial court denied that

request, Appellant renewed her request at trial on April 4, 2025, claiming that it would aid the court "in deciding this high-conflict case." Appellant's Brief, at 59 (citing N.T. Custody Trial, **supra** at 6-9). After considering the evidence presented by the parties, the court determined the evaluation would be "cumulative," and, therefore, denied the request. **See** Trial Court Opinion, **supra** at 12.

The court is "under no obligation to order an evaluation[,]" and the trial court's discretion is broad. **S.C.B. v. J.S.B.**, 218 A.3d 905, 917 (Pa. Super. 2019). Here, the parties presented ample evidence pertaining to the custody factors. Further, although Appellant appears to equate this case with "high-conflict" custody cases, we are not convinced that characterization is accurate. It was reasonable for the court to conclude that an evaluation of a 4-year-old child would have been unnecessary in this case, as any evaluation addressing these issues would have been merely cumulative of the evidence already available to the court. Based on our review of the record, we find no abuse of discretion. **S.C.B.**, **supra**. **See** N.T. Custody Trial, **supra** at 8-9.

In her final three issues, Appellant challenges several of the trial court's evidentiary rulings, claiming prejudice. Our standard of review is narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. **Hawkey v. Peirsel**, 869 A.2d 983, 989 (Pa. Super. 2005) (quoting **Turney Media Fuel, Inc. v. Toll Bros.**, 725 A.2d 836, 839 (Pa. Super. 1999)).

First, Appellant argues the court's decision to allow Dr. Gentry to testify telephonically was error. Appellant argues that she was not given an opportunity to object to the Appellee's March 27, 2025 written request for telephonic testimony, as the motion was granted that day. **See** Appellant's Brief, at 64. At the outset of the April 4, 2025 trial, Appellant again objected to the telephonic testimony, and the court found no basis for the objection. **See** N.T. Custody Trial, **supra** at 9-11. Appellant contends this compromised her ability to "challenge critical testimony, as it significantly impaired Appellant's ability to conduct cross-examination, show the witness material exhibits, and gauge the witnesses' demeanor." Appellant's Brief, at 65-66.

Pennsylvania Rule of Civil Procedure 1930.3 provides: "With the approval of the court upon good cause shown, a party or witness may be deposed or testify by telephone, audiovisual[,] or other electronic means at a designated location in all domestic relations matters." Pa.R.C.P. 1930.3. Here, the court allowed for flexibility in the doctor's schedule, preferring a virtual or telephonic appearance as opposed to a witness being unable to appear at all. **See** N.T. Custody Trial, **supra** at 37. Additionally, Appellant's argument neglects to explain exactly how she was prejudiced, and, further, any claim of prejudice would fail in that Appellant had a full and fair opportunity to cross-examine Dr. Gentry at trial. **See id.** at 18-38. We find no error.

Next, Appellant argues that the trial court erred in allowing Dr. Gentry to provide "a psychological assessment" of Child despite never having

- 11 -

interviewed or observed Child, "in violation of the APA Ethics Code, Standard 9.01(b)[.]" Appellant's Brief, at 15. The parties began coparenting counseling with Dr. Gentry on December 5, 2024. Doctor Gentry testified that he had six one-hour sessions with both parties, and two sessions with just Appellee. N.T. Custody Trial, *supra* at 14. As the trial court stated, Dr. Gentry "testified gratuitously that the couples who are `able to be compatible and amicable are the ones that have something like a 50/50 split in both physical and legal custody.'" Trial Court Opinion, *supra* at 10, citing N.T. Custody Trial, *supra* at 16. Despite Appellant's characterization of the testimony, Dr. Gentry testified with respect to his position as co-parenting counselor to the parties; this point was brought out on cross-examination by Appellee's attorney, and stipulated to by Appellant's attorney. *See id.* at 18-19.

Further, despite Appellant's contention that the court should have excluded Dr. Gentry's testimony because he did not meet personally with Child, it is clear that Dr. Gentry gave no assessment of Child during his direct examination. *Id.* at 14-17. It follows, therefore, that Appellant's claim that Dr. Gentry's testimony violated the ethical code of the APA and its guidelines for child custody evaluations, is meritless. The record supports the trial court's assessment of this issue:

> Every one of these allegations pertains to facts that are either not part of the record (because the undersigned sustained [A]ppellee's contemporaneous objections to the relevance and admissibility of the answers that would have been elicited by [A]ppellant's questions on cross-examination of the psychologist) or that are irrelevant to the statutory custody factors.

- 12 -

Trial Court Opinion, *supra* at 11 (citing N.T. Custody Trial, *supra* at 28-36).

Finally, Appellant claims the trial court erred by admitting Appellee's exhibit of communications between the parties made via the Our Family Wizard app. *See* Appellant's Brief, at 77. As the trial court stated on the record, it did not accept the entirety of the exhibit, a binder of communications, but, instead, informed Appellee's attorney that it would "receive portions of the exhibit relevant to specific custody issues." Trial Court Opinion, at 11, citing N.T. Custody Trial, *supra* at 132-33. We find no error or abuse of discretion. *Hawkey*, *supra*.

In sum, we agree with the trial court—the court's finding that both parties can provide a safe, stable, and consistent environment for Child is supported by the evidence. The fact that Appellee resides in Chestnut Hill and Appellant resides in Lansdale is not an unworkable distance, particularly while Child is in daycare or preschool. The issue may be revisited when Child is in school fulltime, and, according to Appellee's testimony, she is not opposed to moving back to the Lansdale area, particularly since she works in Lansdale as an independent contractor for Merck. *See id.* at 166; *see also id.* ("Q: So are you going to move back to Lansdale then? A: I don't know. I'm not making any promises or right now worrying about that. You know, I would like to, yes. That would be ideal].]").

The record does indicate that the parties' power struggle and negative interactions are not lost on Child. Both parents are clearly bright, compassionate women, and both clearly love their daughter. The trick is to

- 13 -

keep that love front of mind, elevating the level of co-parenting and avoiding gamesmanship. Only then can each parent authentically act in Child's best interests.

We conclude that Appellant's claims are unsupported in the record. Accordingly, we find no error or abuse of discretion, and we affirm the order entered by the Honorable Wendy Demchick-Alloy. **V.B.**, *supra*.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2025